1  PILLSBURY WINTHROP SHAW PITTMAN LLP
   BRUCE A. ERICSON  (SBN 76342)
2  bruce.ericson@pillsburylaw.com
   50 Fremont Street
3  Post Office Box 7880
   San Francisco, California 94120-7880
4  Telephone:   (415) 983-1000
   Facsimile:   (415) 983-1200
5
   William G. McGuinness (pro hac vice)
6  william.mcguinness@friedfrank.com
   Stephanie J. Goldstein (pro hac vice)
7  stephanie.goldstein@friedfrank.com
   Shahzeb Lari (pro hac vice)
8  shahzeb.lari@friedfrank.com
   FRIED, FRANK, HARRIS, SHRIVER
9    & JACOBSON LLP
   One New York Plaza
10 New York, New York 10004
   Telephone:   (212) 859-8000
11 Facsimile:   (212) 859-4000

12 Attorneys for Defendants Goldman, Sachs & Co.,
   Morgan Stanley & Co. Incorporated, JP Morgan
13 Securities, Inc. *as successor-in-interest to* Bear, Stearns
   & Co., Inc., Bear, Stearns & Co., Inc., Deutsche Bank
14 Securities, Inc., UBS Securities, LLC, Credit Suisse
   Securities (USA) LLC, RBS Securities, Inc., Barclays
15 Capital, Inc., Banc of America Securities, LLC, HSBC
   Securities (USA), Inc., Citigroup Global Markets, Inc.,
16 Countrywide Securities Corporation and Merrill Lynch,
   Pierce, Fenner & Smith, Inc.
17

18                  UNITED STATES DISTRICT COURT
                  NORTHERN DISTRICT OF CALIFORNIA
19                     SAN FRANCISCO DIVISION

20 
   | IN RE WELLS FARGO MORTGAGE- | Case No.  C-09-1376 (SI) |
21 | BACKED CERTIFICATES LITIGATION | |
   | | **CONSOLIDATED CLASS ACTION** |
22 | | **ECF** |
   | | |
23 | | **REPLY MEMORANDUM OF** |
   | | **UNDERWRITER DEFENDANTS IN** |
24 | | **SUPPORT OF MOTION TO DISMISS** |
   | | **THE CONSOLIDATED CLASS** |
25 | | **ACTION COMPLAINT** |
   | | |
26 | | Date:        January 29, 2010 |
   | | Time:        9 a.m. |
27 | | Courtroom:   10, 19th Floor |
   | | Judge:       Hon. Susan Illston |
28

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES .................................................................................................... ii

INTRODUCTION ...................................................................................................................... 1

ARGUMENT .............................................................................................................................. 3

I. PLAINTIFFS LACK STANDING WITH RESPECT TO THIRTY-SEVEN
OF THE FIFTY-FOUR CHALLENGED OFFERINGS ..................................................... 3

    A. There Is No Basis To Delay The Question Of Standing Until Class
Certification ............................................................................................................. 3

    B. Plaintiffs Do Not Have Standing Based On The Shelf Registration
Statements ................................................................................................................ 7

II. PLAINTIFFS LACK STANDING TO PURSUE SECTION 12(a)(2)
CLAIMS ............................................................................................................................. 9

CONCLUSION .......................................................................................................................... 13

# **TABLE OF AUTHORITIES**

CASES                                                                                                                           PAGE(S)

*Abu Dhabi Commercial Bank v. Morgan Stanley & Co. Inc.*,
   651 F. Supp. 2d 155 (S.D.N.Y. 2009) ............................................................................... 4, 7

*APA Excelsior III L.P. v. Premiere Techs., Inc.*,
   476 F.3d 1261 (11th Cir. 2007) ........................................................................................ 11 n.11

*Blum v. Yaretsky*,
   457 U.S. 991 (1982) ......................................................................................................... 5 n.3

*Cent. States Se. & Sw. Areas Health & Welfare Fund*,
   504 F.3d 229 (2d Cir. 2007) ............................................................................................. 5 n.3

*Dartley v. ErgoBilt*,
   No. Civ. A. 398CV1442M, 2001 WL 313964 (N.D. Tex. Mar. 29, 2001) ...................... 10

*Eisenberg v. Gagnon*,
   766 F.2d 770 (3d Cir. 1985) ............................................................................................. 5 n.2, 6 n.7

*Forsythe v. Sun Life Fin., Inc.*,
   417 F. Supp. 2d 100 (D. Mass. 2006) .............................................................................. 5 n.4

*Gargiulo v. Isolagen, Inc.*,
   527 F. Supp. 2d 384 (E.D. Pa. 2007) ................................................................................ 10 n.10

*Gen. Tel. Co. v. Falcon*,
   457 U.S. 147 (1982) ......................................................................................................... 5 n.2

*Grasty v. Amalgamated Clothing & Textile Workers Union*,
   828 F.2d 123 (3d Cir. 1987) ............................................................................................. 5 n.2

*Gratz v. Bollinger*,
   539 U.S. 244 (2003) ......................................................................................................... 5 n.2

*Guenther v. Cooper Life Sciences, Inc.*,
   759 F. Supp. 1437 (N.D. Cal. 1990) ................................................................................ 11 n.11

*Gustafson v. Alloyd Co.*,
   513 U.S. 561 (1995) ......................................................................................................... 9

*Henry v. Circus Circus Casinos, Inc.*,
   223 F.R.D. 541 (D. Nev. 2004) ........................................................................................ 4, 7

*Hicks v. Morgan Stanley & Co.*,
   No. 01 Civ. 10071, 2003 WL 21672085 (S.D.N.Y. July 16, 2003) ................................. 5 n.2, 6 n.6

| **CASES** | **PAGE(S)** |
|---|---|

*Hoxworth v. Blinder, Robinson & Co.*,
 980 F.2d 912 (3d Cir. 1992)..................................................................................................5 n.2, 6 n.7

*In re Am. Cont'l Corp./Lincoln Sav. and Loan Sec. Litig.*,
 794 F. Supp. 1424 (D. Ariz. 1992) .......................................................................................5 n.2, 6 n.5

*In re Connectics Corp. Sec. Litig.*,
 542 F. Supp. 2d 996 (N.D. Cal. 2008) ..............................................................................................5 n.3

*In re Countrywide Fin. Corp. Sec. Litig.*,
 588 F. Supp. 2d 1132 (C.D. Cal. 2008), ............................................................................... 7-8, 12 n.12

*In re DDi Corp. Sec. Litig.*,
 No. CV. 03-7063, 2005 U.S. Dist. LEXIS 28216
 (C.D. Cal. July 20, 2005) ..................................................................................................5 n.2, 6 n.5, 12

*In re Dreyfus Aggressive Growth Mut. Fund Litig.*,
 No. 98 Civ. 4318, 2000 U.S. Dist. LEXIS 13469
 (S.D.N.Y. Sept. 19, 2000)..............................................................................................................6 n.5

*In re Grand Theft Auto Video Game Consumer Litig.*,
 2006 WL 3039993 (S.D.N.Y. Oct. 25, 2006) ..................................................................................5 n.3

*In re Juniper Networks, Inc. Sec. Litig.*,
 542 F. Supp. 2d 1037 (N.D. Cal. 2008) ..........................................................................................6 n.5

*In re Levi Strauss & Co. Sec. Litig.*,
 527 F. Supp. 2d 965 (N.D. Cal. 2007) ................................................................................................10

*In re Media Vision Tech. Sec. Litig.*,
 No. C-94-1015, 1995 WL 787549 (N.D. Cal. Oct. 23, 1995) .................................................12

*In re Merrill Lynch Research Reports Sec. Litig.*,
 272 F. Supp. 2d 243 (S.D.N.Y. 2003)...................................................................................................9

*In re MobileMedia Sec. Litig.*,
 28 F. Supp. 2d 901 (D.N.J. 1998) ......................................................................................................6 n.5

*In re Prestige Brands Holding, Inc.*,
 No. 05 CV. 06924, 2006 U.S. Dist. LEXIS 46667 (S.D.N.Y. July 10, 2006)........................10

*In re Proxima Corp. Sec. Litig.*,
 No. 93-1139, 1994 WL 374306 (S.D. Cal. May 3, 1994) .......................................................12

*In re Prudential, Inc. Ltd. P'ships Litig.*,
 163 F.R.D. 200 (S.D.N.Y. 1995) .......................................................................................5 n.2, 6 n.5

| **CASES** | **PAGE(S)** |
|---|---|

*In re Salomon Smith Barney Mut. Fund Fees Litig.*,
   441 F. Supp. 2d 579 (S.D.N.Y. 2006) ................................................................................... 4

*In re Scottish Group Sec. Litig.*,
   524 F. Supp. 2d 370 (S.D.N.Y. 2007) ................................................................................... 12

*In re Suprema Specialties, Inc. Sec. Litig.*,
   438 F.3d 256 (3d Cir. 2006) ................................................................................... 10 n.10

*In re Valence Tech. Sec. Litig.*,
   No. C 94-1542, 1995 WL 274343 (N.D. Cal. May 8, 1995) ................................................................................... 12

*In re Websecure Sec. Litig.*,
   182 F.R.D. 364 (D. Mass. 1998) ................................................................................... 12

*In re Westinghouse Sec. Litig.*,
   90 F.3d 696 (3d Cir. 1996) ................................................................................... 12

*In re WRT Energy Sec. Litig.*,
   Nos. 96 CIV. 3610, 96 CIV. 3611, 1997 WL 576023
   (S.D.N.Y. Sept. 15, 1997) ................................................................................... 11

*La. Mun. Police Employees Ret. Sys. v. Merrill Lynch & Co.*,
   No. 08-9063 (S.D.N.Y. Feb. 19, 2009) ................................................................................... 9

*Lee v. Oregon*,
   107 F.3d 1382 (9th Cir. 1997) ................................................................................... 3, 4

*Lewis v. Casey*,
   518 U.S. 343 (1996) ................................................................................... 3

*Lindquist v. Farmers Ins. Co.*,
   No. CV 06-597-TUC-FRZ, 2008 U.S. Dist. LEXIS 11832 (D. Ariz. Feb. 6, 2008) ................. 4

*Lujan v. Defenders of Wildfire*,
   504 U.S. 555 (1992) ................................................................................... 9 n.9

*Maywalt v. Parker & Parsley Petroleum Co.*,
   147 F.R.D. 51 (S.D.N.Y. 1993) ................................................................................... 5 n.2, 6 n.5

*Miller v. Pacific Shore Funding*,
   224 F. Supp. 2d 977 (D. Md. 2002) ................................................................................... 7

*Mobley v. Acme Mkts., Inc.*,
   473 F. Supp. 851 (D. Md. 1979) ................................................................................... 5 n.3

*Mutchka v. Harris*,
   373 F. Supp. 2d 1021 (C.D. Cal. 2005) ................................................................................... 6 n.5

| **CASES** | **PAGE(S)** |
|---|---|

*Ong v. Sears, Roebuck & Co.*,
   388 F. Supp. 2d 871 (N.D. Ill. 2004) .................................................................................... 9

*O'Shea v. Littleton*,
   414 U.S. 488 (1974) ............................................................................................................. 3

*Payton v. County of Kane*,
   308 F.3d 673 (7th Cir. 2002) ............................................................................................... 4

*Picard Chem., Inc. Profit Sharing Plan v. Perrigo Co.*,
   Nos. 1:95-CV-141, 1:95-CV-290, 1996 WL 739170
   (W.D. Mich. Sept. 27, 1996) ........................................................................................... 5 n.2

*Pinter v. Dahl*,
   486 U.S. 622 (1988) ............................................................................................................. 9

*Plumbers Union Local No. 12 Pension Fund v. Nomura Asset Acceptance Corp.*,
   No. 08-10446-RGS, 2009 WL 3149775 (D. Mass. Sept. 30, 2009) ............................ *passim*

*Schoenhaut v. Am. Sensors, Inc.*,
   986 F. Supp. 785 (S.D.N.Y. 1997) ..................................................................................... 12

*Stack v. Lobo*,
   903 F. Supp. 1361 (N.D. Cal. 1995) ................................................................................... 11

*Tedesco v. Mishkin*,
   689 F. Supp. 1327 (S.D.N.Y. 1988) ....................................................................... 5 n.2, 6 n.5

**STATUTES, RULES AND REGULATIONS**

Fed. R. Civ. Proc. 23(a)(3) ......................................................................................................... 4

Section 11 of the Securities Act of 1933, 15 U.S.C. § 77k ........................................................ 6

17 C.F.R. § 229.512(a)(1) .......................................................................................................... 6

17 C.F.R. § 229.512(a)(2) .......................................................................................................... 6

17 C.F.R. § 230.415 ................................................................................................................... 6

17 C.F.R. § 230.430B ................................................................................................................ 6

# MEMORANDUM OF POINTS AND AUTHORITIES

# INTRODUCTION[1]

Recently, in cases involving the exact factual and legal circumstances at issue here — i.e., allegedly inadequate disclosures in connection with separate MBS offerings deriving from common base registration statements — courts have held that plaintiffs lack standing to pursue Section 11 and Section 12 claims with respect to those offerings in which they did not purchase securities, even when they purport to represent a class. *See* UW Mem. at 6 (collecting cases). The most recent of these cases, *Plumbers Union Local No. 12 Pension Fund v. Nomura Asset Acceptance Corp.*, correctly found that the "overwhelming weight of authority" *requires* dismissal. *See* No. 08-10446-RGS, 2009 WL 3149775, at *4 (D. Mass. Sept. 30, 2009). Astonishingly, Plaintiffs do not even acknowledge, much less attempt to distinguish, this recent, directly on-point precedent in their opposition brief, even though, like the plaintiffs in these other cases, they admittedly did not purchase securities in most of the Offerings. Instead, Plaintiffs present the same meritless arguments rejected by *Nomura* and other courts, which ignore both the controlling law and the facts of this case, as well as distort and mischaracterize the inapposite case-law that they rely upon.

***First***, Plaintiffs try to delay the inevitable by arguing that the question of standing should await the class certification stage. As the *Nomura* court held in rejecting a similar ploy, "[w]hile [P]laintiffs maintain that standing is an issue to be resolved at the class certification stage, '[a] plaintiff may not avoid the standing inquiry merely by styling his suit as a class action.'" *Nomura*, 2009 WL 3149775, at *3 (citation omitted). *Nomura's* holding that standing is a threshold issue follows Supreme Court precedent and is in accord with the numerous courts that have expressly rejected the notion advanced by Plaintiffs — i.e., that they can defer and ultimately evade the fundamental jurisdictional requirements of standing by virtue of their status as class representatives on the strength of their purchases of only some of the securities at issue.

---

[1] Unless otherwise specified, capitalized terms used herein have the same meaning as in the Underwriter Defendants' opening brief, dated October 30, 2009 (DE 160) (cited herein as "UW Mem."). "P. Mem." refers to Plaintiffs' brief in opposition to the Underwriter Defendants' dismissal motion, dated December 15, 2009 (DE 170).

*See infra* Sec. I.A. To hold otherwise would be to allow Plaintiffs to assert claims relating to Offerings in which they did not participate, and against Underwriter Defendants who had nothing to do with the Offerings in which Plaintiffs bought Certificates (i.e., Underwriter Defendants against whom Plaintiffs have no claim). There is no basis for such a result.

*Second*, Plaintiffs contend that they have standing as to the Offerings in which they did not purchase Certificates because all of the Certificates derive from three base Shelf Registration Statements. Plaintiffs, however, ignore that each Offering is deemed to be a legally separate and distinct offering precisely because the Prospectus Supplements — and not the Shelf Registration Statements — contain the operative facts relevant to the particular securities being offered. Indeed, the vast bulk of the alleged misstatements and omissions challenged in the Complaint are contained in the Prospectus Supplements, and relate to each of the specific pools of mortgage assets underlying each Offering. In this circumstance, Plaintiffs have absolutely no grounds to assert claims relating to disclosures contained in Offerings in which they did not purchase Certificates. *See infra* Sec. I.B; UW Mem. at 5-6.

*Third*, despite Supreme Court precedent holding that Plaintiffs must actually allege that they purchased Certificates *in* the Offerings directly *from* the Underwriter Defendants against whom they have asserted Section 12(a)(2) claims, Plaintiffs argue that they can circumvent these requirements because they have provided enough other "information" about their purchases. Plaintiffs are incorrect. They have failed to provide the only pertinent information: whether any of Plaintiffs purchased Certificates in the Offerings from the relevant Underwriter Defendants. Accordingly, Plaintiffs cannot pursue Section 12(a)(2) claims. *See infra* Sec. II; UW Mem. at 7-9.

In sum, Plaintiffs' claims relating to the thirty-seven Offerings for which they did not purchase Certificates and all of Plaintiffs' Section 12(a)(2) claims against the Underwriter Defendants must be dismissed for lack of standing. In addition, Plaintiffs' claims should be dismissed for the reasons set forth in the Wells Fargo Defendants' reply memorandum, in which the Underwriter Defendants join.

# ARGUMENT

## I. PLAINTIFFS LACK STANDING WITH RESPECT TO THIRTY-SEVEN OF THE FIFTY-FOUR CHALLENGED OFFERINGS

Plaintiffs do not dispute that they only purchased Certificates issued in *seventeen* of the fifty-four challenged Offerings. Thus, as demonstrated at length in the Underwriter Defendants' opening brief, Plaintiffs do not have standing to pursue claims as to those Offerings in which they made no purchases. *See* UW Mem. at 4-7. In response, Plaintiffs deliberately ignore the relevant caselaw, and instead argue that, because they purchased Certificates issued in *some* of the Offerings, they have standing to assert claims with respect to *all* of the Offerings. *See* P. Mem. at 4.

### A. There Is No Basis To Delay The Question Of Standing Until Class Certification

Plaintiffs' primary argument — that the question of their standing should await the class certification stage, ostensibly because "absent members" of the class that Plaintiffs purport to represent may be able to satisfy the necessary statutory and constitutional standing requirements (P. Mem. at 4-8) — is flat out wrong.

*First*, as Supreme Court precedent conclusively establishes, a plaintiff's standing to pursue a claim is a fundamental, threshold question that applies with equal force to a purported class representative. Specifically:

> [t]hat a suit may be a class action … adds nothing to the question of standing, *for even named plaintiffs who represent a class 'must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong and which they purport to represent.'*

*Lewis v. Casey*, 518 U.S. 343, 357 (1996) (citations omitted, emphasis added); *see also O'Shea v. Littleton*, 414 U.S. 488, 494 (1974) ("if none of the named plaintiffs purporting to represent a class establishes the requisite of a case or controversy with the defendants, none may seek relief on behalf of himself or any other member of the class") (footnote and citations omitted).

It is therefore unsurprising that courts across the country have emphatically rejected Plaintiffs' position that the ordinary standing requirements of Article III and the securities laws are inapplicable in the class action context. *See, e.g.*, *Lee v. Oregon,* 107 F.3d 1382, 1390 (9th

- 3 -

Cir. 1997) ("If the litigant fails to establish standing, he may not 'seek relief on behalf of himself or any other member of the class.'") (citations omitted); *Payton v. County of Kane*, 308 F.3d 673, 682 (7th Cir. 2002) ("Standing cannot be acquired through the back door of a class action."); *Nomura*, 2009 WL 3149775, at *3 ("While plaintiffs maintain that standing is an issue to be resolved at the class certification stage, '[a] plaintiff may not avoid the standing inquiry merely by styling his suit as a class action.'") (citation omitted); *Abu Dhabi Commercial Bank v. Morgan Stanley & Co. Inc.*, 651 F. Supp. 2d 155, 175 (S.D.N.Y. 2009) ("Standing is a threshold question for any case brought before a federal court, regardless of whether plaintiffs bring the case as a class action.") (footnote omitted); *see also* UW Mem. at 4 (collecting cases).

Plaintiffs completely ignore the controlling precedent even though their contention — that they can pursue claims relating to Offerings for which they have no standing because absent class members may have standing (P. Mem. at 4) — is directly at odds with it. Instead, Plaintiffs attempt to conflate standing with the typicality requirements of Federal Rule of Civil Procedure 23(a)(3). *See* P. Mem. at 4-5. But, as courts in this Circuit have consistently held, "standing is distinct from the Rule 23 class action requirements." *Lindquist v. Farmers Ins. Co.*, No. CV 06-597-TUC-FRZ, 2008 U.S. Dist. LEXIS 11832, at *34 (D. Ariz. Feb. 6, 2008). That is, "[s]tanding 'is a jurisdictional element that must be satisfied prior to class certification.'" *Lee*, 107 F.3d at 1390 (citation omitted); *see also In re Salomon Smith Barney Mut. Fund Fees Litig.*, 441 F. Supp. 2d 579, 607 (S.D.N.Y. 2006) ("the Article III standing determination should precede that of class certification"); *Henry v. Circus Circus Casinos, Inc.*, 223 F.R.D. 541, 544 (D. Nev. 2004) ("Standing is one of the keys necessary to open the door to the federal courthouse. Rule 23 merely provides a procedural doorstop which holds the door open…."). Thus, before Plaintiffs can seek certification to pursue claims on behalf of absent class members, they must first establish that they have individual standing to pursue those claims.

None of the multitude of authorities cited by Plaintiffs supports delaying the determination of standing until class certification. *See* P. Mem. at 4-7. The majority of those cases are Rule 23 class certification decisions that did not even consider the question of

- 4 -

standing.[2] The remaining cases specifically found that the named plaintiffs *had* individual standing and therefore could proceed with their claims, but left the question of the scope of the class the plaintiff could represent to be determined at the class certification stage.[3] None of those cases has any bearing on the sole issue at hand here: whether Plaintiffs who individually lack standing with respect to thirty-seven of the challenged Offerings can proceed with Section 11 and 12 claims relating to those Offerings on behalf of a purported class. The "overwhelming weight of authority" (*Nomura*, 2009 WL 3149775, at *3) makes clear that Plaintiffs cannot do so. *See* UW Mem. at 6 (collecting cases).[4]

***Second***, Plaintiffs' insinuation that they have standing as to all fifty-four Offerings because the purchasers in all of the Offerings suffered similar injuries arising from the same allegedly harmful conduct (P. Mem. at 6) is incorrect. Here, each of the Offerings involved: (i) an entirely distinct pool of mortgage assets with detailed disclosures about those assets, (ii) different risk disclosures, (iii) the sale of different securities with different levels of credit

---

[2] *See Gratz v. Bollinger*, 539 U.S. 244, 262-63 (2003); *Gen. Tel. Co. v. Falcon*, 457 U.S. 147, 160-61 (1982); *Hoxworth v. Blinder, Robinson & Co.*, 980 F.2d 912, 914, 924 (3d Cir. 1992); *Grasty v. Amalgamated Clothing & Textile Workers Union*, 828 F.2d 123, 125 (3d Cir. 1987); *Eisenberg v. Gagnon*, 766 F.2d 770, 784 (3d Cir. 1985); *In re DDi Corp. Sec. Litig.*, No. CV 03-7063, 2005 U.S. Dist. LEXIS 28216, at *15-16 (C.D. Cal. July 20, 2005); *Hicks v. Morgan Stanley & Co.*, No. 01 Civ. 10071, 2003 WL 21672085, at *1 (S.D.N.Y. July 16, 2003); *Picard Chem., Inc. Profit Sharing Plan v. Perrigo Co.*, Nos. 1:95-CV-141, 1:95-CV-290, 1996 WL 739170, at *1 (W.D. Mich. Sept. 27, 1996); *In re Prudential, Inc. Ltd. P'ships Litig.*, 163 F.R.D. 200, 203 (S.D.N.Y. 1995); *Maywalt v. Parker & Parsley Petroleum Co.*, 147 F.R.D. 51, 56 (S.D.N.Y. 1993); *In re Am. Cont'l Corp./Lincoln Sav. & Loan Sec. Litig.*, 794 F. Supp. 1424, 1432 (D. Ariz. 1992); *Tedesco v. Mishkin*, 689 F. Supp. 1327, 1330-32 (S.D.N.Y. 1988).

[3] *See In re Connectics Corp. Sec. Litig.*, 542 F. Supp. 2d 996, 1004 (N.D. Cal. 2008); *In re Grand Theft Auto Video Game Consumer Litig.*, No. 06 MD 1739, 2006 WL 3039993, at *3 (S.D.N.Y. Oct. 25, 2006); *Blum v. Yaretsky*, 457 U.S. 991, 1000 (1982); *Mobley v. Acme Mkts., Inc.*, 473 F. Supp. 851, 859 (D. Md. 1979). *Cf. Cent. States Se. & Sw. Areas Health & Welfare Fund*, 504 F.3d 229 (2d Cir. 2007) (rejecting settlement class because named plaintiff did not have standing to represent class).

[4] Not only do Plaintiffs fail to address this precedent, the bulk of Plaintiffs' cases do not even involve the securities laws, and thus have no bearing on the question of whether Plaintiffs have statutory standing to assert Section 11 and 12 claims. But they also have little relevance to the general question of constitutional standing in the specific context of securities claims, given that the standing inquiry "is particularly important in securities litigation, where strict application of standing principles is needed to avoid vexatious litigation and abusive discovery." *Forsythe v. Sun Life Fin., Inc.*, 417 F. Supp. 2d 100, 118 (D. Mass. 2006).

- 5 -

protection, (iv) a different issuer, and (v) different underwriters. *See* UW Mem. at 3-6. Thus, as the applicable SEC regulations establish, each Offering is a separate and distinct issuance of different securities for purposes of determining liability. *See* UW Mem. at 5-6; 17 C.F.R. § 229.512(a)(1)-(2); *see also* 17 C.F.R. §§ 230.415, 230.430B. In other words, Plaintiffs' claims are against *different* defendants, based on *different* securities, issued pursuant to *different* offering materials, containing *different* disclosures.

This conclusively rebuts any notion that Plaintiffs have either constitutional or statutory standing. For purposes of constitutional standing, Plaintiffs cannot claim to have been personally injured by allegedly deficient disclosures about mortgage loans underlying Certificates they did not purchase; nor can they claim to have been harmed by the conduct of Underwriter Defendants who underwrote Offerings in which Plaintiffs did not purchase Certificates. *See infra* at 7-9; UW Mem. at 5-6. Likewise, Section 11 statutory standing requires that a plaintiff have purchased "such security" that was sold pursuant to the challenged offering materials (15 U.S.C. § 77k(a)) — that is, Plaintiffs can only pursue claims with respect to securities they actually purchased.

The cases relied on by Plaintiffs are entirely inapposite here. Those cases involved (i) securities issued by the *same* defendant pursuant to the *same* registration statement and prospectus,[5] (ii) causes of action based on the *same* security issued in a single offering,[6] or (iii) claims based on the *same* misstatements.[7]

***Third***, as Plaintiffs concede, "[t]o establish Article III standing in a class action … *for every named defendant there must be at least one named plaintiff who can assert a claim directly*

---

[5] *See In re Juniper Networks, Inc. Sec. Litig.*, 542 F. Supp. 2d 1037, 1043, 1052 (N.D. Cal. 2008); *DDi*, 2005 U.S. Dist. LEXIS 28216, at *15-16; *Mutchka v. Harris*, 373 F. Supp. 2d 1021, 1022-23 (C.D. Cal. 2005); *In re Dreyfus Aggressive Growth Mut. Fund Litig.*, No. 98 Civ. 4318, 2000 U.S. Dist. LEXIS 13469, at *14 (S.D.N.Y. Sept. 19, 2000); *In re MobileMedia Sec. Litig.*, 28 F. Supp. 2d 901, 909 (D.N.J. 1998); *Prudential*, 163 F.R.D. at 203; *Maywalt*, 147 F.R.D. at 56; *Am. Cont'l*, 794 F. Supp. at 1432; *Tedesco*, 689 F. Supp. at 1330-32.

[6] *See Hicks*, 2003 WL 21672085, at *1.

[7] *See Hoxworth*, 980 F.2d at 914, 924; *Eisenberg*, 766 F.2d at 784.

- 6 -

*against that defendant*." P. Mem. at 5. However, Plaintiffs then gloss over the fact that not a single one of the lead or named Plaintiffs purchased any securities from, and thus have no claims against, six of the Underwriter Defendants: Barclays, BofA, Countrywide, HSBC, Merrill Lynch and Morgan Stanley. *See* P. Mem. at 5, n.6; UW Mem. at 7. At a minimum, these Underwriter Defendants must be dismissed from this action. *See, e.g.*, *Nomura*, 2009 WL 3149775, at *3-5 (dismissing Section 11 and 12 claims as to underwriters of offerings in which plaintiffs did not purchase securities; "[t]o hold otherwise would shunt aside the inevitable risk that 'any plaintiff could sue a defendant against whom the plaintiff has no claim in a putative class action…'"); *Henry*, 223 F.R.D. at 544 ("at least one named plaintiff must have standing in his own right to assert a claim against each named defendant before he may purport to represent a class claim against that defendant"); *Miller v. Pacific Shore Funding,* 224 F. Supp. 2d 977, 996 (D. Md. 2002) ("In a multi-defendant action or class action, the named plaintiffs must establish that they have been harmed by each of the defendants.").

### B. Plaintiffs Do Not Have Standing Based On The Shelf Registration Statements

Plaintiffs also contend, based solely on *In re Countrywide Fin. Corp. Sec. Litig.*, 588 F. Supp. 2d 1132 (C.D. Cal. 2008), that they have standing to pursue claims relating to all fifty-four Offerings because each of the Offerings ultimately derives from one of the three Shelf Registration Statements and Plaintiffs purchased Certificates issued under each Shelf Registration Statement. *See* P. Mem. at 8-9. That argument is meritless.

As a threshold matter, *Countrywide* is contrary to well-established law. *See* UW Mem. at 6. Moreover, *Countrywide* is inapposite here. As the *Countrywide* court recognized, the claims in that case — unlike this one — were not based on MBS purchases or specific MBS securitizations. *See* 588 F. Supp. 2d at 1144. Instead, *Countrywide* involved corporate securities offered by a single issuer (Countrywide itself), underwritten by overlapping underwriters, two of the three challenged offerings used common prospectuses and pricing supplements, and the plaintiffs' claims were based on identical alleged misstatements about Countrywide's business in SEC filings that were incorporated into Countrywide's shelf registration statements. *Id.* at 1165

n.36, 1167.  Accordingly, Countrywide did not address the structure or product at issue here and in the *Nomura* line of cases:  mortgage backed securities offerings involving separate issuers, different underwriters, a unique set of underlying mortgage assets and differing Prospectus Supplements containing disclosures particular to each Offering.  *See* UW Mem. at 5-6; *supra* at 6.

Rather, the question before the *Countrywide* court was whether plaintiffs had standing to pursue claims for purchases made pursuant to multiple offerings that derived from registration statements containing allegedly identical misstatements about Countrywide.  *See* 588 F. Supp. 2d at 1165.  In resolving that question in favor of the plaintiffs, the *Countrywide* court "emphasize[d] the narrow application of [its] analysis," recognizing that "*it is possible that later issuances could incorporate very different alleged violations and have in common only a minor common misrepresentation or omission.  The differences could be significant enough to lead a Court to deny standing for class plaintiffs on a motion to dismiss*."  *Id.* at 1167 (emphasis added).

This case does not fit within the "narrow application" of *Countrywide*, even assuming that it is good law.  As previously noted, the Certificates issued in each of the Offerings were not an investment in Wells Fargo securities, but in specific (and different) mortgage backed securities issued by separate issuers and collateralized by a distinct pool of mortgage assets, and involving different historical information and risk factors.  *See supra* at 6; UW Mem. at 3-6.  Given the distinct set of assets in each of the Offerings, the disclosures relevant to each Offering necessarily differed, and were contained exclusively in the Prospectus Supplements for each Offering.   By contrast, the generic Shelf Registration Statements did not contain any specific information about any particular Offering of Certificates or the underlying loans.  Nor could they.  When the Shelf Registration Statements were filed, the issuing trusts had not been created and the mortgage loans underlying each Offering, to the extent they even existed, had not been pooled together.  *See* Wells Fargo Mem. at 4-5; RJN Exs. 2-5.  Thus, by necessity, the Complaint almost exclusively challenges statements and/or omissions in the *Prospectus Supplements*, *not the Shelf Registration Statements*.

Indeed, there are only three paragraphs in the Complaint challenging statements in the Shelf Registration Statements (¶¶ 75, 125, 126), and two of those (¶¶ 125-26) relate to statements contained in a form prospectus supplement attached to the Shelf Registration Statements that was superseded by the actually issued Prospectus Supplements.[8] The remainder of the Complaint is devoted to allegations regarding the supposed insufficiency of disclosures about the specific Offerings contained in the Prospectus Supplements. *See, e.g.*, ¶¶ 67-74, 92-95, 110-124, 127. In other words, the allegations relating to the Shelf Registration Statements are dwarfed by the far more voluminous allegations regarding the different Prospectus Supplements. Therefore, even under *Countrywide*, Plaintiffs cannot establish standing for Offerings in which they did not purchase securities by reference to the Shelf Registration Statements. *See Nomura*, 2009 WL 3149775, at *4 n.3 (plaintiffs do not have standing to assert Section 11 and 12 claims with respect to offerings in which they did not purchase securities, even if offerings were pursuant to a common registration statement); *La. Mun. Police Employees Ret. Sys. v. Merrill Lynch & Co.*, No. 08-9063, Tr. at 7-9, 62 (S.D.N.Y. Feb 19, 2009) (same); *Ong v. Sears, Roebuck & Co.*, 388 F. Supp. 2d 871, 891-92 (N.D. Ill. 2004).[9]

## II. PLAINTIFFS LACK STANDING TO PURSUE SECTION 12(a)(2) CLAIMS

Following the United States Supreme Court's decisions in *Gustafson v. Alloyd Co.*, 513 U.S. 561, 566-67 (1995) and *Pinter v. Dahl*, 486 U.S. 622, 647 (1988), courts have uniformly held that Section 12(a)(2) only applies if the plaintiff meets two independent requirements: (i) the plaintiff purchased securities *in* a public offering (not the secondary market); and (ii) the plaintiff purchased securities *directly from, or at the solicitation of, the defendant*. *See, e.g.*, UW Mem. at 7-8; *In re Merrill Lynch Research Reports Sec. Litig.*, 272 F. Supp. 2d 243, 255

---

[8] As discussed at length by the Wells Fargo Defendants, Plaintiffs' conclusory assertions that the disclosures regarding underwriting guidelines identified in ¶ 75 were misleading because the Wells Fargo Defendants allegedly did not follow any guidelines at all are meritless.

[9] Indeed, to hold otherwise would eviscerate Article III's requirement that Plaintiffs must have suffered a personal injury "fairly traceable" to the defendants' allegedly unlawful conduct. *Lujan v. Defenders of Wildfire*, 504 U.S. 555, 560-61 (1992). Plaintiffs cannot plausibly claim to have been personally injured by disclosures about Certificates they did not purchase or by the conduct of Defendants with whom they were not in privity. *See supra* at 6-7.

- 9 -

(S.D.N.Y. 2003) ("Under Section 12(a)(2), 'only a defendant from whom the plaintiff purchased securities may be liable.'") (citation omitted); *In re Levi Strauss & Co. Sec. Litig.*, 527 F. Supp. 2d 965, 983 (N.D. Cal. 2007) ("§ 12(a)(2) does not extend to any after market transactions").

Plaintiffs argue that they have satisfied these fundamental requirements because the Complaint "specifies which security each plaintiff bought, the date of the purchase, and the underwriters for each security, alleges that the Underwriters sold the securities, and that Lead Plaintiffs acquired securities 'pursuant and/or traceable to the Offering Documents.'" P. Mem. at 10. This is pure obfuscation. None of these allegations plead the pertinent facts, which are obviously known to Plaintiffs: did they purchase securities *in* the Offerings and did they purchase securities *from* the Underwriter Defendants.

***Plaintiffs Do Not Plead Purchases In The Offerings***. Plaintiffs' assertion, without any citation to the Complaint, that the Complaint alleges that Plaintiffs "purchased on [sic] the Offerings" (P. Mem. at 10) is simply false. All the Complaint alleges is that Plaintiffs purchased their Certificates "pursuant or traceable to" the Offering Materials. ¶ 129. That allegation does not establish a purchase *in* any of the Offerings — it could equally well refer to a purchase in the secondary market, which is not actionable under Section 12(a)(2). In recognition of this ambiguity, courts have repeatedly rejected such allegations as insufficient to establish standing. *See* UW Mem. at 8; *In re Prestige Brands Holding, Inc.*, No. 05 CV. 06924, 2006 U.S. Dist. LEXIS 46667, at *27 (S.D.N.Y. July 10, 2006) ("to the extent that shareholders allege, as here, merely that they bought shares 'traceable to' or 'in connection with' an IPO, they lack standing, and the Complaint is to that extent dismissed"); *Dartley v. ErgoBilt Inc.*, No. CIV. A. 398CV1442M, 2001 WL 313964, at *2 (N.D. Tex. Mar. 29, 2001) (allegation that plaintiffs "purchased shares 'pursuant to and traceable to' the Prospectus" insufficient).[10]

---

[10] None of the cases cited by Plaintiffs (P. Mem. at 10-11) are to the contrary. The plaintiffs in each of those cases, unlike here, expressly alleged that they had purchased securities in the challenged offerings. *See In re Suprema Specialties, Inc. Sec. Litig.*, 438 F.3d 256, 274 n.7 (3d Cir. 2006) (plaintiffs' assertions of purchases "*in*" *and* "traceable to" challenged offerings sufficient) (emphasis added); *Gargiulo v. Isolagen, Inc.*, 527 F. Supp. 2d 384, 392 (E.D. Pa. 2007) (same).

- 10 -

Nor is there any merit to Plaintiffs' contention that the timing of their purchases indicates that they purchased in the Offerings. *See* P. Mem. at 10. To the contrary, the dates of the majority of Plaintiffs' purchases are entirely inconsistent with the notion that they purchased in the Offerings. In particular, a number of Plaintiffs' purchases of Certificates took place months — in some cases, years — after the relevant Certificates were issued. For instance, Plaintiffs' only purchases of 2006-AR6 Certificates, which were issued pursuant to a March 30, 2006 Prospectus Supplement, took place *one and two years later*, on January 31, 2007 and July 29, 2008.[11] Plaintiffs never explain how purchases made so long after the Offering could possibly be in that offering, rather than in the secondary market.

Therefore, the timing of Plaintiffs' purchases merely highlights the need for a plain statement as to whether Plaintiffs purchased Certificates in the Offerings. Plaintiffs' refusal to provide such information, which is clearly within their possession, is inexcusable and requires dismissal of their Section 12(a)(2) claims. *See* UW Mem. at 7-8; *Stack v. Lobo*, 903 F. Supp. 1361, 1375 (N.D. Cal. 1995) (where complaint "contains no allegations that Plaintiffs purchased their shares in the IPO . . . Plaintiffs do not state a claim under § 12[a](2)"); *In re WRT Energy Sec. Litig.*, Nos. 96 CIV. 3610, 96 CIV. 3611, 1997 WL 576023, at *5-6 (S.D.N.Y. Sept. 15, 1997) (same).

***Plaintiffs Do Not Plead Purchases From The Underwriter Defendants.*** Plaintiffs readily concede that the Complaint does not allege that Plaintiffs purchased their securities from any of the Underwriter Defendants. *See* P. Mem. at 10. Instead, Plaintiffs contend that this

---

[11] This is just one example of Plaintiffs' numerous late purchases. A chart summarizing Plaintiffs' purchases, and the dates of those purchases, is attached at Tab A. Similarly, according to Plaintiffs, a number of their purchases were made *prior* to the issuance of the Prospectus Supplements they are now challenging. *See* Tab A. If, as the case appears to be, Plaintiffs entered into purchase commitments before the Prospectus Supplements were issued, their claims relating to those supplements are barred as a matter of law because they cannot claim reliance on those supplements. *See, e.g.*, *APA Excelsior III L.P. v. Premiere Techs., Inc.*, 476 F.3d 1261, 1272 (11th Cir. 2007) (plaintiffs who enter into binding investment agreement prior to filing of registration statements cannot rely on presumption of reliance under Section 11); *Guenther v. Cooper Life Sciences, Inc.*, 759 F. Supp. 1437, 1440 (N.D. Cal. 1990) (to rule in the plaintiffs' favor "would enable investors . . . to bring a section 11 action even though at the time they purchased their shares they could not possibly have relied on misleading registration statements, since none had been filed. Such a result would clearly contravene the purpose of section 11.").

deficiency is irrelevant because they have identified the Certificates they purchased, and alleged that one or more of the Underwriter Defendants underwrote the Offerings in which those Certificates were initially offered. *See id.* at 10-11. Those allegations, however, do not provide any plausible basis to infer that any of Plaintiffs actually purchased any Certificates from any of the Underwriter Defendants, especially since Plaintiffs have not alleged that their purchases were made in the initial Offerings. Based on Plaintiffs' allegations, it is equally plausible that they actually purchased their Certificates from sellers in the secondary market. "If plaintiffs did in fact purchase the Certificates directly from the defendants, they should have said so. An evasive circumlocution does not suffice as a substitute." *Nomura*, 2009 WL 314915, at *4; *see also In re Websecure Sec. Litig.*, 182 F.R.D. 364, 368 (D. Mass. 1998) (generalized allegations that underwriter sold securities to investors insufficient where plaintiffs did not claim direct purchase from underwriter); *In re Media Vision Tech. Sec. Litig.*, No. C-94-1015, 1995 WL 787549, at *2 (N.D. Cal. Oct. 23, 1995) (dismissing Section 12(a)(2) claim where plaintiffs failed to plead purchase from underwriters).

The cases relied on by Plaintiffs (P. Mem. at 11) do not hold otherwise: in each of those cases, the plaintiffs — unlike Plaintiffs here — factually alleged purchases from, or active solicitation by, the defendants. *See In re Westinghouse Sec. Litig.*, 90 F.3d 696, 718 (3d Cir. 1996) (plaintiffs alleged that "each of the underwriter defendants sold Westinghouse securities directly to plaintiffs and that each plaintiff purchased Westinghouse securities directly from an underwriter defendant"); *DDi*, 2005 U.S. Dis. LEXIS 28216, at *66 (same); *In re Proxima Corp. Sec. Litig.*, No. 93-1139, 1994 WL 374306, at *11 (S.D. Cal. May 3, 1994) (same); *In re Scottish Group Sec. Litig.*, 524 F. Supp. 2d 370, 399 (S.D.N.Y. 2007) (complaint alleged that plaintiffs purchased in offering underwritten by defendants); *In re Valence Tech. Sec. Litig.*, No. C 94-1542, 1995 WL 274343, at *17 (N.D. Cal. May 8, 1995) (defendants solicited purchases through investor road shows); *Schoenhaut v. Am. Sensors, Inc.*, 986 F. Supp. 785, 790 (S.D.N.Y. 1997) (same).[12]

---

[12] Despite Plaintiffs' heavy reliance on *Countrywide*, they fail to mention that the *Countrywide* court dismissed Section 12(a)(2) claims because the "plaintiffs fail[ed] to plead that they

- 12 -

## **CONCLUSION**

For the reasons set forth above, in the Underwriter Defendants' opening memorandum, and in the Wells Fargo and Rating Agency Defendants' dismissal papers, the Underwriter Defendants respectfully request that the claims against them be dismissed with prejudice.

Dated: January 15, 2010

>PILLSBURY WINTHROP SHAW PITTMAN LLP
>
>By:  /s/  Bruce A. Ericson
>         Bruce A. Ericson
>
>50 Fremont Street
>San Francisco, California 94105-2228
>Telephone: (415) 983-1000
>Facsimile: (415) 983-1200
>bruce.ericson@pillsbury.com
>
>FRIED, FRANK, HARRIS, SHRIVER
>  & JACOBSON LLP
>
>William G. McGuinness
>Stephanie J. Goldstein
>Shahzeb Lari
>One New York Plaza
>New York, New York 10004
>Telephone: (212) 859-8000
>Facsimile: (212) 859-4000
>william.mcguinness@friedfrank.com
>stephanie.goldstein@friedfrank.com
>shahzeb.lari@friedfrank.com
>
>*Attorneys for Underwriter Defendants*

7522985

---

purchased the securities directly from specific underwriters, or directly traceable to specific underwriters, as required." 588 F. Supp. 2d at 1183.