1  BERNSTEIN LITOWITZ BERGER
        & GROSSMANN LLP
2  DAVID R. STICKNEY  (Bar No. 188574)
   TIMOTHY A. DeLANGE  (Bar No. 190768)
3  MATTHEW P. JUBENVILLE  (Bar No. 228464)
   TAKEO A. KELLAR  (Bar No. 234470)
4  12481 High Bluff Drive, Suite 300
   San Diego, CA 92130
5  Tel:    (858) 793-0070
   Fax:   (858) 793-0323
6  davids@blbglaw.com
   timothyd@blbglaw.com
7  matthewj@blbglaw.com
   takeok@blbglaw.com

8

*Attorneys for Lead Plaintiffs Alameda
9  County Employees' Retirement Association,
Government of Guam Retirement Fund, New
10 Orleans Employees' Retirement System and
Louisiana Sheriffs' Pension and Relief Fund
11 And Plaintiffs Public Employees' Retirement
System of Mississippi and Vermont Pension
12 Investment Committee*

13

14                UNITED STATES DISTRICT COURT

15    NORTHERN DISTRICT OF CALIFORNIA - SAN FRANCISCO DIVISION

| | |
|---|---|
| 16 IN RE WELLS FARGO MORTGAGE-<br>BACKED CERTIFICATES<br>17 LITIGATION | Civil Action No. 09-cv-01376-SI<br><br>CONSOLIDATED CLASS ACTION<br>ECF<br><br>PLAINTIFFS' OPPOSITION TO: (1) THE WELLS<br>FARGO DEFENDANTS' AND INDIVIDUAL<br>DEFENDANTS' MOTION TO DISMISS THE<br>AMENDED COMPLAINT; AND (2) THE<br>UNDERWRITER DEFENDANTS' MOTION TO<br>DISMISS THE AMENDED COMPLAINT |

18
19
20
21
22
23
24
25
26
27
28

1

## <u>TABLE OF CONTENTS</u>

2
<u>Page</u>

3 TABLE OF AUTHORITIES ................................................................................ii-v

4 I.      INTRODUCTION ........................................................................................1

5 II.     SUMMARY OF THE ACTION .................................................................3

6 III.    ARGUMENT .................................................................................................5

7      A.    Plaintiffs Amended Their Claims In Accordance With
           The Court's Order .............................................................................5

8
            1.    Under *American Pipe*, The Class Action
9                  Complaint Tolled The Statute Of Limitations For
                 The Additional Plaintiffs.................................................6

10
            2.    The Amended Complaint States Claims Under
11                  Section 12(a)(2) ..............................................................9

12             3.    Plaintiffs And The Class Suffered Economic Loss
                 For Purchases Of WFMBS 2006-AR16 And
13                  WFMBS 2007-13 Certificates .......................................11

14      B.    Defendants' Contentions Against The Sustained Claims
           Are Still Not Grounds For Dismissal...............................................12

15
            1.    As The Court Previously Found, The Amended
16                  Complaint Alleges Untrue Statements And
                 Omissions In The Offering Documents ..........................13

17
                 a.    Untrue Statements And Omissions Related To
18                       Underwriting Standards ..................................13

19                   b.    Untrue Statements And Omissions Related To Ratings
                     And The Ratings Process .................................16

20
                  c.    Untrue Statements And Omissions Related To Appraisals
21                       and LTV Ratios................................................18

22             2.    Defendants Still Have Not Met Their Heavy
                 Burden For The Statute Of Limitations Defense ...........20

23
24 IV.    CONCLUSION...........................................................................................22

25

26

27

28

---

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Abu Dhabi Commercial Bank v. Morgan Stanley & Co.*,
    651 F. Supp. 2d 155 (S.D.N.Y. 2009)..................................................................17

*American Pipe & Constr. Co. v. Utah*,
    414 U.S. 538 (1974)........................................................................... passim

*In re Apple Computer Sec. Litig.*,
    886 F.2d 1109 (9th Cir. 1989) ......................................................17, 19

*Betz v. Trainer Wortham & Co., Inc.*,
    519 F.3d 863 (9th Cir. 2008) .......................................................20, 21

*Cal. Pub. Employees' Ret. Sys. v. Chubb Corp.*,
    2002 WL 33934282 (D.N.J. June 26, 2002) ..............................8, 9

*In re Charles Schwab Corp. Sec. Litig.*,
    257 F.R.D. 534 (N.D. Cal. 2009) ..................................................21

*In re Crazy Eddie Sec. Litig.*,
    747 F. Supp. 850 (E.D.N.Y. 1990) .................................................8

*Crown, Cork & Seal Co. v. Parker*,
    462 U.S. 345 (1983).........................................................................6

*Eminence Capital, LLC v. Aspeon, Inc.*,
    316 F.3d 1048 (9th. Cir. 2003) .....................................................22

*Employers-Teamsters Local Nos. 175 & 505 Pension Trust Fund v. Anchor Capital Advisors*,
    498 F.3d 920 (9th Cir. 2007) ..........................................................7

*In re Enron Corp. Sec., Deriv. & ERISA Litig.*,
    511 F. Supp. 2d 742 (S.D. Tex 2005) .....................................16, 17

*In re Enron Corp. Sec. Deriv. & ERISA Litig.*,
    529 F. Supp. 2d 644 (S.D. Tex. 2006) ...........................................8

*Erickson v. Kiddie*,
    1986 WL 544 (N.D. Cal. Feb. 24, 1986) ......................................21

*In re Fitch, Inc.*,
    330 F.3d 104 (2d Cir. 2003)..........................................................17

*Garber v. Legg Mason, Inc.*,
    537 F. Supp. 2d 597 (S.D.N.Y. 2008).............................................15

*Herman & MacLean v. Huddleston*,
   459 U.S. 375 (1983).................................................................................12

*Hertzberg v. Dignity Partners, Inc.*,
   191 F.3d 1076 (9th Cir. 1999) .........................................................2, 9, 10

*Howard v. Hui*,
   2001 U.S. Dist. LEXIS 15443 (N.D. Cal. Sept. 24, 2001) ............................9

*In re IndyMac Mortgage-Backed Sec. Litig.*,
   2010 WL 2473243 (S.D.N.Y. June 21, 2010) ..............................8, 10, 22

*In re Infonet Servs. Corp. Sec. Litig.*,
   310 F. Supp. 2d 1106 (C.D. Cal. 2003) ....................................................21

*In re Initial Pub. Offering Sec. Litig.*,
   214 F.R.D. 117 (S.D.N.Y. 2002) ................................................................8

*In re Initial Pub. Offering Sec. Litig.*,
   241 F. Supp. 2d 281 (S.D.N.Y. 2003)......................................................11

*In re Issuer Plaintiff Initial Pub. Offering Antitrust Litig.*,
   2002 WL 31132906 (S.D.N.Y. Sept. 25, 2002)...........................................7

*Johnson v. Aljian*,
   490 F.3d 778 (9th Cir. 2007) .....................................................................21

*Kaplan v. Rose*,
   49 F.3d 1363 (9th Cir. 1994) .....................................................................12

*Korwek v. Hunt*,
   827 F. 2d 874 (2d Cir. 1987)........................................................................8

*Landmen Partners Inc. v. Blackstone Group, L.P.*,
   659 F. Supp. 2d 532 (S.D.N.Y. 2009).......................................................15

*LaSalle Nat'l Bank v. Duff & Phelps Credit Rating Co.*,
   951 F. Supp. 1071 (S.D.N.Y. 1996)..........................................................17

*In re Lehman Bros. Sec. & ERISA Litig.*,
   684 F. Supp. 2d 485 (S.D.N.Y. 2010) .......................................................14

*In re Levi Strauss & Co. Sec. Litig.*,
   527 F. Supp. 2d 965 (N.D. Cal. 2007) .......................................................10

*Lierboe v. State Farm Mut. Auto. Ins. Co.*,
   350 F.3d 1018 (9th Cir. 2003) .....................................................................9

*In re McKesson HBOC, Inc. Sec. Litig.*,
   126 F. Supp. 2d 1248 (N.D. Cal. 2000) .....................................................16

OPPOSITION TO WELLS FARGO DEFENDANTS' AND UNDERWRITER DEFENDANTS' MOTIONS TO DISMISS
Case No. 09-cv-01376-SI

*McKowan Lowe & Co. v. Jasmine, Ltd.,*
   295 F.3d 380 (3d Cir. 2002) ................................................................................8

*Merck & Co., Inc. v. Reynolds,*
   130 S. Ct. 1784 (U.S. 2010) .........................................................................20, 21

*New Jersey Carpenters Health Fund v. Residential Capital LLC,*
   2010 WL 1257528 (S.D.N.Y. Mar. 26, 2010) ...................................................15

*New Jersey Carpenters Vacation Fund v. The Royal Bank of Scotland Group, PLC,*
   2010 WL 1172694 (S.D.N.Y. Mar. 26, 2010) ...............................................15, 22

*Palmer v. Stassinos,*
   236 F.R.D. 460 (N.D. Cal. 2006) .......................................................................8

*Pub. Employees' Ret. Sys. of Miss. v. Merrill Lynch & Co. Inc.,*
   2010 WL 2175875 (S.D.N.Y. June 1, 2010) ...........................................9, 20, 22

*Randall v. Loftsgaarden,*
   478 U.S. 647 (1986) ..........................................................................................12

*Robbin v. Fluor Corp.,*
   835 F.2d 213 (9th Cir. 1987) ...............................................................................8

*Rubke v. Capitol Bancorp Ltd.,*
   551 F.3d 1156 (9th Cir. 2009) ...............................................................16, 17, 19

*Schneider v. Apple Computer, Inc.,*
   496 U.S. 942 (1990) ..........................................................................................17

*Schur v. Friedman & Shaftan, P.C.,*
   123 F.R.D. 611 (N.D. Cal. 1988) .......................................................................8

*In re Syntex Corp. Sec. Litig.,*
   95 F.3d 922 (9th Cir. 1996) .................................................................................9

*Toombs v. Leone,*
   777 F.2d 465 (9th Cir. 1985) .............................................................................21

*Tregenza v. Great Am. Commc'ns Co.,*
   12 F.3d 717 (7th Cir. 1993) ...............................................................................21

*Tsirekidze v. Syntax-Brillian Corp.,*
   2009 WL 2151838 (D. Ariz. July 17, 2009) ......................................................11

*Virginia Bankshares, Inc. v. Sandberg,*
   501 U.S. 1083 (1991) .............................................................................16, 17, 19

*Walters v. Edgar,*
   163 F.3d 430 (7th Cir. 1998) ...............................................................................9

OPPOSITION TO WELLS FARGO DEFENDANTS' AND UNDERWRITER DEFENDANTS' MOTIONS TO DISMISS
Case No. 09-cv-01376-SI

*In re Wash. Mut. Sec. Deriv. & ERISA Litig.*,
        694 F. Supp. 2d 1192 (W.D. Wash. 2009) ...................................................................16

*In re Wells Fargo Mortgage Backed Certificates Litig.*,
        2010 U.S. Dist. LEXIS 39825 (N.D. Cal. Apr. 22, 2010) ...................................... passim

**STATUTES, RULES & REGULATIONS**

15 U.S.C. § 77k(a) ...................................................................................................................14

15 U.S.C. § 77m ......................................................................................................................20

15 U.S.C. § 77R .........................................................................................................................9

17 C.F.R. § 229.1111 ...............................................................................................................15

Fed. R. Civ. P. 8 ..................................................................................................................6, 11

Fed. R. Civ. P. 15(a) ...............................................................................................................22

OPPOSITION TO WELLS FARGO DEFENDANTS' AND UNDERWRITER DEFENDANTS' MOTIONS TO DISMISS
Case No. 09-cv-01376-SI

1  New Orleans Employees' Retirement System, Louisiana Sheriffs' Pension & Relief Fund,

2  Government of Guam Retirement Fund, and Alameda County Employees' Retirement Association

3  (collectively, "Lead Plaintiffs") and additional plaintiffs the Vermont Pension Investment Committee,

4  the Public Employees' Retirement System of Mississippi, the Policemen's Annuity & Benefit Fund of

5  the City of Chicago, the Southeastern Pennsylvania Transportation Authority and the Plumbers &

6  Steamfitters Local 60 Pension Plan ("Additional Plaintiffs," together with Lead Plaintiffs, "Plaintiffs")

7  submit this Memorandum of Law in Opposition to the separate motions to dismiss by:

8  (1) the Wells Fargo Defendants and the Individual Defendants ("Wells Mot.") (Dkt. No. 214); and

9  (2) the Underwriter Defendants ("Underwriter Mot.") (Dkt. No. 212).

10 I.    INTRODUCTION

11     This is a securities class action involving the sale of over $36 billion in mortgage pass-through

12 certificates (the "Certificates") issued pursuant to offering documents that contained untrue statements

13 and omitted material facts.[1]  The Amended Complaint asserts claims for violations of Sections 11,

14 12(a)(2) and 15 of the Securities Act of 1933 (the "Securities Act") against Wells Fargo Bank, N.A.

15 ("Wells Fargo Bank"), Wells Fargo Asset Securities Corporation (the "Depositor"), the Underwriter

16 Defendants, and the Individual Defendants.[2]

17     When granting in part and denying in part Defendants' prior motions to dismiss, the Court

18 sustained Plaintiffs' allegations of untrue statements and omissions in the Offering Documents related

19 to underwriting standards, ratings and appraisals.  *In re Wells Fargo Mortgage Backed Certificates*

20 *Litig.*, 2010 U.S. Dist. LEXIS 39825 (N.D. Cal. Apr. 22, 2010) ("April 22 Order").  Dkt. No. 198.  The

21 Court rejected Defendants' statute of limitations defense as "unpersuasive," and sustained Plaintiffs'

---

[1]  ¶1.  "¶_" refers to paragraph(s) in the Amended Consolidated Class Action Complaint For Violations Of §§ 11, 12(a)(2) And 15 Of The Securities Act of 1933 (the "Amended Complaint"). Dkt. No. 203.

[2]  "Underwriter Defendants" refers to Bear, Stearns & Co. Inc., Goldman, Sachs & Co., Deutsche Bank Securities, Inc., UBS Securities, LLC, Credit Suisse Securities (USA), LLC, RBS Securities, Inc., Citigroup Global Markets, Inc., Banc of America Securities, LLC, and Merrill Lynch, Pierce, Fenner & Smith, Inc. "Individual Defendants" refers to David Moskowitz, Franklin Codel, Douglas K. Johnson, and Thomas Neary.  "Wells Fargo Defendants" refers collectively to Wells Fargo Bank, N.A., Wells Fargo Asset Securities Corp., and the Individual Defendants.

1   Section 15 claims against the Wells Fargo Defendants.  *Id.* at *23-24, *44-45.  The Court also granted

2   Plaintiffs leave to amend to: (1) "designate additional named plaintiffs who purchased securities

3   through those offerings"; and (2) "allege facts properly giving rise to standing."  *Id.* at *20, 22.

4   Plaintiffs amended their claims in accordance with the April 22 Order.  The Amended

5   Complaint re-alleges the sustained claims and omits the dismissed claims.  It also adds the Additional

6   Plaintiffs, who purchased in ten offerings which the Lead Plaintiffs did not, and alleges facts giving

7   rise to standing for Plaintiffs' Section 12(a)(2) claims.  The Underwriter Defendants contend that the

8   claims asserted by the Additional Plaintiffs are time-barred.  Underwriter Mot. at 5-6.  This argument

9   is devoid of merit.  Under *American Pipe & Constr. Co. v. Utah*, 414 U.S. 538, 554 (1974), the filing

10  of a class action suspends the applicable statute of limitations and repose for all putative class

11  members.  Here, the initial complaint identifying claims now asserted in the Amended Complaint was

12  filed on March 27, 2009.  Accordingly, under *American Pipe*, the applicable statute of limitations and

13  repose for the claims of all putative class members, including the Additional Plaintiffs, was suspended,

14  and the claims are timely.

15  Defendants further contend that Plaintiffs' Section 12 claims should be dismissed because the

16  Amended Complaint does not include by rote the phrase "in the initial offering."  The Amended

17  Complaint, however, alleges facts giving rise to standing, including the dates the Certificates were

18  offered, the date the Plaintiffs purchased the Certificates, and that Plaintiffs acquired each security

19  directly from an Underwriter Defendant.  Nothing more is required.  *See Hertzberg v. Dignity*

20  *Partners, Inc.*, 191 F.3d 1076, 1081 (9th Cir. 1999) (finding that plaintiffs must have "purchased the

21  security directly from the issuer of the prospectus").

22  Separate and apart from challenging the Additional Plaintiffs' claims and the Section 12

23  claims, Defendants again move to dismiss the sustained claims.  In so doing, they largely recycle

24  arguments that this Court previously considered and rejected, or they attempt to raise fallback

25  arguments that could have been, but were not, raised in their prior motions.  Defendants contend, as

26  they did before, that ratings misstatements are "opinions," despite the Court's holding that Plaintiffs'

27  allegations are "sufficient to establish an actionable misstatement with respect to the rating process."

28

April 22 Order, 2010 U.S. Dist. LEXIS 39825, at *43.  Further, Defendants again attempt to argue that the claims in the Amended Complaint are untimely as a matter of law.  As this Court correctly found, however, the statute of limitations defense is fact-intensive and is generally not appropriate for consideration at the pleading stage.  Moreover, no sufficient suspicion of a Securities Act claim reasonably existed prior to May 20, 2008, when the Certificates that were initially rated "A" or higher were first downgraded below investment-grade.  The initial action here was timely filed on March 27, 2009 – well within one year of the May 20, 2008 downgrades.

The Wells Fargo Defendants' motion is really a disguised motion for reconsideration that fails to meet the requirements of Civil Local Rule 7-9.  Under that rule, no party may file a motion for reconsideration "without first obtaining leave of Court."  The Rule states that leave can only be granted if a party cites "a material difference in fact or law" or a "manifest failure by the Court to consider material facts or dispositive legal arguments."  It further states that requests for leave are prohibited from repeating "any oral or written argument made by the applying party" and that "[a]ny party who violates this restriction shall be subject to appropriate sanctions."  Defendants do not – because they cannot – cite any material difference in law or fact nor a manifest failure to consider material facts that would make re-challenging any of Plaintiffs' allegations appropriate.

In short, the Amended Complaint states claims for Defendants' violations of the Securities Act, complies with this Court's Order and precedent from the Supreme Court and the Ninth Circuit.  Defendants' motions should be denied in their entirety, and they should be ordered to answer the Amended Complaint within 20 days.

II.   SUMMARY OF THE ACTION

Wells Fargo Bank, acting in coordination with the Underwriter Defendants and the rating agencies, sold over $36 billion of Certificates to investors in 27 different trusts pursuant to the Offering Documents.  ¶¶3, 43.  The Certificates were sold primarily to institutional investors, such as Plaintiffs here, who purchased the Certificates as purportedly safe, investment-grade securities.  ¶50.  The Offering Documents contained untrue statements of material fact, or omitted to state material facts necessary to make the statements therein not misleading, regarding: (1) the underwriting

standards purportedly used in connection with the origination of the underlying mortgages; (2) the maximum loan-to-value ratios used to qualify borrowers; (3) the appraisals of the properties underlying the mortgages; and (4) the ratings of the Certificates.  ¶¶5, 116.

The true facts which were omitted from the Offering Documents were:

- Wells Fargo Bank, its affiliates, and the additional originators had not followed the stated underwriting standards when issuing loans to borrowers;
- The underlying mortgages were based on appraisals that overstated the value of the underlying properties; and
- The credit ratings were based on outdated assumptions, relaxed ratings criteria, and inaccurate loan information.

¶6.

As a result, Plaintiffs and the Class purchased Certificates that were far riskier than represented, were not of the "best quality," or even "medium credit quality," and were not equivalent to other investments with the same credit ratings.  ¶¶4, 7, 40.  Virtually all of the Certificates have now been downgraded below investment-grade.  ¶118.

Traditionally, loan originators had financial incentive to use prudent underwriting practice to ensure that the borrower had the ability to repay the note and that the underlying property was sufficiently valuable to serve as collateral.  ¶68.  With the proliferation of securitizations, however, this model gave way to the "originate to distribute" model.  ¶69.  Under the new model, loans were pooled together, securitized and sold to investors in the form of mortgage-backed securities. Securitization meant that the originators were no longer required to hold the loans they issued to maturity, and the credit risk was instead transferred to investors.  *Id.*  Loan fees and sales revenue became the originator's primary profit mechanism, making the sheer quantity of loans more important than the quality of the loans.

This model was highly lucrative for banks, including Wells Fargo Bank.  Wells Fargo Bank established a subsidiary, the Depositor, whose sole purpose was to securitize loans.  ¶¶21-22, 71.  To complete the sale of the loans (and to transfer the risk), the Depositor needed to brand its Certificates with the highest investment-grade ratings from rating agencies.  The ratings assigned to the Certificates purportedly addressed the "likelihood of the receipt by certificateholders of all

1  distributions of principal and interest to which such certificateholders are entitled." ¶¶100-01. The

2  ratings also supposedly addressed "the structural, legal and issuer aspects associated with the

3  certificates, including the nature of the underlying mortgage loans and the credit quality of the credit

4  support provider, if any." *Id.* The Offering Documents failed to disclose that the rating agencies used

5  outdated and unreliable models when rating the Certificates. ¶¶6, 110, 112-14. Further, as the result

6  of the systemic violations of the underwriting standards, the ratings were based on "inaccurate loan

7  information" related to borrower credit-worthiness, ability to repay, and the sufficiency of the

8  collateral. ¶¶6, 67, 72-81, 83-85. Accordingly, the Certificates' ratings were unjustifiably high, and

9  the statements in the Offering Documents about the ratings and the ratings process were untrue and

10  omitted material facts. ¶¶4, 105.

11      The rating agencies maintained investment-grade ratings on all Certificates initially rated "A"

12  and higher until May 20, 2008. ¶104. They maintained investment-grade ratings on all Certificates

13  initially rated "AAA" until December 16, 2008. *Id.* The ratings on virtually all of the Certificates

14  have since been downgraded. ¶¶7, 118. The Certificates, therefore, are no longer marketable near the

15  prices paid by Plaintiffs and the Class. ¶7.

16  III.    ARGUMENT

17          A.    Plaintiffs Amended Their Claims In
                 Accordance With The Court's Order
18

19      The April 22 Order sustained Plaintiffs' Section 11 claims against the Wells Fargo Defendants

20  and the Underwriter Defendants related to each of the alleged untrue statements and omissions in

21  offerings in which Lead Plaintiffs purchased Certificates. As to underwriting misstatements, the Court

22  stated that "the Offering Documents were misleading as to the ***extent*** to which Wells Fargo and the

23  third-party originators deviated from their guidelines." 2010 U.S. Dist. LEXIS 39825, at *38

24  (emphasis in original). As to the ratings misstatements, the Court found that "statements by

25  executives of Moody's and Standard and Poor's in which the executive admitted that they were aware

26  at the time the subject ratings were made that the agencies' rating models were outdated . . . are

27  sufficient to establish an actionable misstatement with respect to the rating process." *Id.* at *43. As to

28

OPPOSITION TO WELLS FARGO AND UNDERWRITER DEFENDANTS' MOTION TO DISMISS
Case No. 09-cv-01376-SI

1    the appraisal/loan-to-value misstatements, the Court found that Plaintiffs allegations that "Wells

2    Fargo's practices permitted the pervasive and systematic use of inflated appraisals, affecting all types

3    of mortgages," were sufficient to state a claim.  *Id.* at \*40-41.

4         The Court dismissed without prejudice claims arising from Certificates that the Lead Plaintiffs

5    had not purchased, as well as the Section 12(a)(2) claims.  In so doing, the Court granted Plaintiffs

6    leave to amend to: (1) "designate additional named plaintiffs who purchased securities through those

7    offerings"; and (2) "allege facts properly giving rise to standing."  *Id.* at \*20, 22.

8         Plaintiffs amended their complaint in accordance with the Court's instructions.  Plaintiffs

9    designated the five Additional Plaintiffs who purchased securities in ten offerings that the Lead

10   Plaintiffs did not purchase.  In addition, rather than merely allege that Plaintiffs purchased "pursuant

11   or traceable" to the Offering Documents for purposes of Section 12, the Amended Complaint alleges

12   that Plaintiffs purchased directly from the Underwriter Defendants. Fed. R. Civ. P. 8 requires nothing

13   more in order for Plaintiffs to state actionable claims.

14                  1.      Under *American Pipe*, The Class Action Complaint Tolled
                            <u>The Statute Of Limitations For The Additional Plaintiffs</u>
15

16        The Underwriter Defendants attempt to argue that the claims of the Additional Plaintiffs are

17   untimely.  They are wrong.  In *American Pipe*, the Supreme Court held that the filing of a class action

18   suspends the applicable statute of limitations and repose for all putative class members until a decision

19   on class certification is issued.  414 U.S. at 554; *see also Crown, Cork & Seal Co. v. Parker*, 462 U.S.

20   345, 349-50 (1983) ("The filing of a class action tolls the statute of limitations 'as to all asserted

21   members of the class'").  The Supreme Court explained that, were the rule otherwise, "[p]otential class

22   members would be induced to file protective motions to intervene or to join in the event that a class

23   was later found unsuitable" which would defeat the "efficiency and economy of litigation" normally

24   associated with Rule 23 class actions.  *Id.* at 553.

25        Here, the initial complaint was filed on March 27, 2009, and asserted the claims of the

26   Additional Plaintiffs.  Accordingly, under *American Pipe*, the applicable statute of limitations and

27   repose for all claims of all putative class members, including the Additional Plaintiffs, was suspended

28

1    as of March 27, 2009.[3]  In its April 22, Order, the Court specifically afforded leave to amend to

2    "designate additional named plaintiffs who purchased securities through those offerings." *Id.* at *20.

3            The Underwriter Defendants incorrectly contend that because the Lead Plaintiffs lacked

4    standing to assert claims on behalf of purchasers in the ten additional offerings those claims are now

5    time-barred.  Underwriter Mot. at 6.  As the court in *In re Flag Telecom Holdings, Ltd. Sec. Litig.*

6    explained: "[T]he failure to apply the *American Pipe* rule to cases where a class action complaint was

7    dismissed for lack of standing undermines the policies underlying Rule 23 and is inconsistent with the

8    Court's reasoning in *American Pipe*."  352 F. Supp. 2d 429, 455 (S.D.N.Y. 2005).

9            In *Flag Telecom*, the court dismissed the plaintiffs' Section 12(a)(2) claims because "none of

10   the named plaintiffs purchased shares of Flag in the company's IPO."  *Id.* at 454.  Plaintiffs filed an

11   amended complaint naming an additional plaintiff who purchased in the IPO.  *Id.*  The court rejected

12   the same argument the Underwriter Defendants raise here:

13                  Failure to apply the *American Pipe* rule would undermine the policies of
                    "efficiency and economy of litigation" which underlie Rule 23. . . . Rule
14                  23 and the PSLRA tend to encourage investors who might otherwise
                    bring lawsuits to refrain from filing a complaint or intervening in an
15                  action when those investors feel their interests are adequately protected in
                    a proposed class action that has already been filed. Indeed, an investor
16                  such as [the new plaintiff] would probably have concluded that he had
                    little chance of becoming lead plaintiff after Loftin, who appears to have
17                  invested a substantial amount of capital in Flag, filed his May 2002
                    Complaint. *[The new plaintiff] should not be punished simply because*
18                  *he        failed        to        anticipate        that        plaintiff's*
                    *§ 12(a)(2) claims would be dismissed because none of the named*
19                  *plaintiffs in the action had standing to sue on those claims.*

20   *Id.* at 456.

21           Numerous other courts are in accord.  *See Employers-Teamsters Local Nos. 175 & 505*

22   *Pension Trust Fund v. Anchor Capital Advisors*, 498 F.3d 920, 925 (9th Cir. 2007) (suggesting that

23   appellants could have filed a successor class action where "the appropriateness of a class action was

24

25   ---

26   [3]  "Because the complaint itself is the ultimate determinant of the putative class," Defendants were on
     notice that the putative class clearly included the ten offerings which the Additional Plaintiffs
27   purchased.  *In re Issuer Plaintiff Initial Pub. Offering Antitrust Litig.*, 2002 WL 31132906, at *3
     (S.D.N.Y. Sept. 25, 2002) (holding that statute of limitations was tolled under *American Pipe* where
28   the same underwriters were named as defendants in an earlier class action in which class certification
     had not yet been decided).

OPPOSITION TO WELLS FARGO AND UNDERWRITER DEFENDANTS' MOTION TO DISMISS
Case No. 09-cv-01376-SI

1  never examined [and] instead the case was voluntarily dismissed before the class was certified");

2  *Schur v. Friedman & Shaftan, P.C.*, 123 F.R.D. 611, 613 (N.D. Cal. 1988) (denying motion to dismiss

3  because prior class action filing tolled statute of limitations); *In re Enron Corp. Sec. Deriv. & ERISA*

4  *Litig.*, 529 F. Supp. 2d 644, 709 (S.D. Tex. 2006) (Securities Act claims of a newly added plaintiff

5  were tolled under *American Pipe*); *Cal. Pub. Employees' Ret. Sys. v. Chubb Corp.*, 2002 WL

6  33934282, at *27-30 (D.N.J. June 26, 2002) (finding that limitations period was tolled upon filing of

7  original class action complaint which allowed proper class representatives to be substituted for

8  standing purposes); *In re Initial Pub. Offering Sec. Litig.*, 214 F.R.D. 117, 123 n.9 (S.D.N.Y. 2002)

9  (holding that the filing of the lead plaintiff's action tolled the § 12(a)(2) claims). *See also McKowan*

10  *Lowe & Co. v. Jasmine, Ltd.*, 295 F.3d 380, 384-89 (3d Cir. 2002) (tolling claims and permitting

11  intervention of a class representative with standing).

12  Defendants rely heavily on *Korwek v. Hunt*, 827 F. 2d 874, 876-77 (2d Cir. 1987). In *Korwek*,

13  however, plaintiffs re-filed their case after class certification was denied. *Id.* Indeed, *Korwek* "stands

14  only for the proposition that once class certification is denied, putative class members may not rely on

15  the *American Pipe* rule to commence a new, substantially identical class action because this would

16  allow the putative class members to 'argue and reargue the question of class certification by filing new

17  but repetitive complaints.'" *Flag Telecom*, 352 F. Supp. 2d at 455 n.20. The court in *In re IndyMac*

18  *Mortgage-Backed Sec. Litig.*, 2010 WL 2473243, at *4 (S.D.N.Y. June 21, 2010) ("IndyMac MBS")

19  recently rejected this exact argument and reliance on *Korwek*, finding that *American Pipe* tolling

20  applied because where there is no definitive determination on class certification: "[t]he concerns about

21  repose, inefficiency, and wasteful litigation expressed in *Korwek* ... are inapposite." Here, for these

22  same reasons – and especially where this Court explicitly granted leave to name additional plaintiffs –

23  *American Pipe* tolling applies and the Additional Plaintiffs' claims are timely.[4]

24  ───────────────

25  [4]  *Robbin v. Fluor Corp.*, 835 F.2d 213, 214 (9th Cir. 1987), and *Palmer v. Stassinos*, 236 F.R.D. 460
26  (N.D. Cal. 2006), which Defendants cite, are likewise inapposite as the courts' decisions to deny
tolling in both cases were made after the determination of class certification. Defendants also rely on
27  *In re Crazy Eddie Sec. Litig.*, 747 F. Supp. 850, 856 (E.D.N.Y. 1990), where the court applied the rule
in *Korwek* to a class action brought after a previous class action was dismissed for lack of standing.
28  This case, however, was decided prior to the passage of the PSLRA and extension of *Korwek* in this
manner has been criticized by other courts. *See, e.g., Flag Telecom*, 352 F. Supp. 2d at 455 n.20;

OPPOSITION TO WELLS FARGO AND UNDERWRITER DEFENDANTS' MOTION TO DISMISS
Case No. 09-cv-01376-SI

1    Defendants' reliance on *Pub. Employees' Ret. Sys. of Miss. v. Merrill Lynch & Co. Inc.*, 2010

2    WL 2175875, at *2 (S.D.N.Y. June 1, 2010) ("Merrill MBS") is misplaced because this timing issue

3    was never before the Court.  The undersigned Lead Counsel in this action is also Lead Counsel in the

4    *Merrill MBS* action and is very familiar with the issues and arguments asserted in that case.  The court

5    there was never presented with, and did not rule on, the application of *American Pipe*.  Indeed, the

6    issue simply was never raised because no additional plaintiff sought to bring claims.[5]

7    Finally, because the Additional Plaintiffs' claims were tolled, Defendants' relation back

8    argument is a red herring.  Underwriter Mot. at 8.  The Amended Complaint asserts the same claims

9    on behalf of "all persons or entities who purchased or otherwise acquired mortgage pass-through

10   Certificates … pursuant or traceable to" the exact registration statements and offerings identified in the

11   original complaint.  Defendants were on notice of the Additional Plaintiffs' claims when the action

12   was timely filed on March 27, 2009.  Accordingly, Defendants' relation back analysis is irrelevant.[6]

13                    2.       The Amended Complaint States
                               Claims Under Section 12(a)(2)

14

15   Section 12 extends liability to any person who "offers or sells a security … by means of a

16   prospectus … which includes an untrue statement of a material fact …."  15 U.S.C. § 77R.  The Ninth

17   Circuit has found that because Section 12 contains the language "the person purchasing such security

18   *from him*," plaintiffs must have "purchased the security directly from the issuer of the prospectus."

19   *Hertzberg*, 191 F.3d at 1081 (emphasis in original).  Defendants contend that Plaintiffs have failed to

20

21   *Chubb Corp.*, 2002 WL 33934282, at *30 (failure to apply *American Pipe* would undermine the
22   efficiency and economy of litigation which underlies Rule 23 and the PSLRA).

23   [5]  Defendants' other cases are also easily distinguished.  For example, *Lierboe v. State Farm Mut.
     *Auto. Ins. Co.*, 350 F.3d 1018 (9th Cir. 2003), is not a securities class action subject to the PSLRA and
24   does not consider or discuss *American Pipe* tolling.  Additionally, *Lierboe* was dismissed after the
     district court decided class certification, and the court never granted leave to amend to name additional
25   plaintiffs.  Similarly, *Walters v. Edgar*, 163 F.3d 430 (7th Cir. 1998), is a non-securities case that was
     previously certified as a class and is, therefore, factually inapposite.

26   [6]  Defendants' relation back cases are factually distinguishable.  *See In re Syntex Corp. Sec. Litig.*, 95
     F.3d 922, 925 (9th Cir. 1996) (the statute of limitations barred "extending the class period"); *Howard
27   v. Hui*, 2001 U.S. Dist. LEXIS 15443, at *19-20 (N.D. Cal. Sept. 24, 2001) (the statute of limitations
     barred adding new insider trading claims never asserted in the original action).  Unlike the Amended
28   Complaint here, both *Syntex* and *Howard* added new claims that were never previously asserted.

9

OPPOSITION TO WELLS FARGO AND UNDERWRITER DEFENDANTS' MOTION TO DISMISS
Case No. 09-cv-01376-SI

1  properly plead a valid Section 12 claim because the Amended Complaint does not include by rote the

2  phrase "in the initial offering."  *See* Wells Mot. at 5-6.  Defendants are wrong.

3      Nothing in the statutory language or *Hertzberg* requires plaintiffs to purchase "in the initial

4  offering" in order to have standing to assert Section 12(a)(2) claims.  Rather, Plaintiffs need only to

5  allege they purchased the security directly from the issuer of the prospectus.  *Id.* at 1081.  Here, the

6  Amended Complaint clearly complies with this standard, alleging: (1) that the Underwriter Defendants

7  were engaged to sell the Certificates, ¶41, (2) the Underwriter Defendant who sold each security to

8  each Plaintiff, ¶¶15, 23-31, 43, 56; (3) the date the Plaintiff purchased the security, *id.*; (4) the

9  prospectus supplement date for each security, *id.*; (5) that Plaintiffs acquired the security "directly"

10  from the Underwriter Defendant, *id.*; and (6) that Plaintiffs purchased "pursuant to" rather than

11  "traceable to" the offerings at issue, ¶¶137-45.  Moreover, even if Plaintiffs were required to plead that

12  they purchased in the initial offering, the prospectus supplement dates and the purchase dates make

13  clear which purchases were either in the initial offering, or directly from the Underwriter Defendant

14  soon thereafter, rather than in the secondary market.

15      Defendants' cases do not support their position.  For example, in *Hertzberg*, the court found

16  that anyone who purchased stock under the registration statement at issue could assert a Section 11

17  cause of action, regardless of when the purchase was made.  191 F.3d at 1081.  Indeed, *Hertzberg* says

18  nothing requiring Section 12(a)(2) plaintiffs to have purchased "in the initial offering."  Likewise, in

19  *In re Levi Strauss & Co. Sec. Litig.*, 527 F. Supp. 2d 965, 981 (N.D. Cal. 2007), the plaintiffs argued –

20  unlike here – that Section 12(a)(2) liability should be extended to aftermarket purchasers who

21  purchased "traceable to" an offering.  In fact, Plaintiffs specifically eliminated the "traceable to"

22  language from the Section 12(a)(2) count section in the Amended Complaint.  Finally, Defendants rely

23  on *IndyMac MBS*, where the court **upheld** allegations similar to those in the Amended Complaint.

24  2010 WL 2473243, at *3 (finding Section 12(a)(2) allegations sufficient where plaintiffs alleged that

25  (1) they purchased "pursuant to" the relevant Offering Documents; (2) they purchased a specified

26  number of Certificates on specified dates (some of which corresponded to the initial offering dates) at

27

28

OPPOSITION TO WELLS FARGO AND UNDERWRITER DEFENDANTS' MOTION TO DISMISS
Case No. 09-cv-01376-SI

1    specified prices; (3) specific Underwriter Defendants were associated with each individual offering;

2    and (4) the Underwriter Defendants "promoted and sold" the Certificates for their own personal gain).

3        Plaintiffs' Section 12(a)(2) allegations comply with the requirements of the Court's April 22

4    Order, the Securities Act, Ninth Circuit law and Fed. R. Civ. P. 8.  Defendants' motions to dismiss

5    these claims should be denied.

6                        3.     Plaintiffs And The Class Suffered
                                Economic Loss For Purchases Of WFMBS
7                                2006-AR16 And WFMBS 2007-13 Certificates

8        Defendants challenge Plaintiffs' standing to represent purchasers of two Certificates on the

9    grounds that Plaintiffs have not adequately pled an economic loss.  Wells Mot. at 11-12.  With respect

10   to MissPERS, Defendants do not – and cannot – challenge MissPERS' standing for the WFMBS

11   2007-AR4, WFMBS 2007-10, WFMBS 2006-3, WFMBS 2006-6, WFMBS 2006-AR10, WFMBS

12   2006-AR11, WFMBS 2006-AR17 and WFMBS 2006-AR2 offerings.  ¶118.  Likewise, Defendants do

13   not dispute that MissPERS suffered a net loss on its purchases of Certificates at issue in this litigation.

14   Rather, Defendants isolate the Wells Fargo Mortgage Backed Securities 2006-AR16 Trust ("WFMBS

15   2006-AR16") and attempt to challenge MissPERS' ability to represent investors on the grounds that

16   MissPERS purportedly realized a nominal gain.[7]   In truth, however, MissPERS sold part of its

17   WFMBS 2006-AR16 Certificates ($1,410,000 in face value) at a loss.  It is well established that

18   determination of damages is a question of fact not appropriate for resolution on the motion to dismiss.

19   *In re Initial Pub. Offering Sec. Litig.*, 241 F. Supp. 2d 281, 351 n.80 (S.D.N.Y. 2003) ("The

20   determination of value [in a Section 11 case] is a fact-intensive inquiry.").  The fact that one investor

21   has different damages calculations from other Class members does not prevent it from serving as a

22   Class representative.  *See*, *e.g.*, *Tsirekidze v. Syntax-Brillian Corp.*, 2009 WL 2151838, at *4 (D. Ariz.

23   July 17, 2009) ("[D]ifferences in the amount of damages, the size or manner of [stock] purchaser, the

24   nature of the purchaser, and even the specific document influencing the purchase will not render a

25   claim atypical in most securities cases") (internal citations omitted).  The WFMBS 2006-AR16

26

27   ───────────────
     [7]   Contrary to Defendants' contention, MissPERS purchased its Certificates at a total price of
28   $5,084,854.50 and sold at a total price of $5,089,068, a difference of $4,213.50, not $421,350.

OPPOSITION TO WELLS FARGO AND UNDERWRITER DEFENDANTS' MOTION TO DISMISS
Case No. 09-cv-01376-SI

Certificates were originally rated Aaa and AAA by Moody's and Fitch, respectively, but have since been severely downgraded, and are currently rated Caa2 and CCC.  ¶118.  The WFMBS 2006-AR16 Certificates are no longer marketable near the prices paid by MissPERS and the Class.  ¶7.

Defendants next argue that SEPTA's claims related to the Wells Fargo Mortgage Backed Securities 2007-13 Trust ("WFMBS 2007-13") should be dismissed for failure to plead an economic loss.  Wells Mot. at 12.  This argument is premised on a faulty reading of SEPTA's Certification. SEPTA's Certification includes a column titled "Shares," which lists the *face value* of SEPTA's purchases in WFMBS 2007-13.  Defendants mistakenly assert that this column indicates a purchase or sale price, which leads them to (incorrectly) conclude that SEPTA received its entire investment back upon its sale of WFMBS 2007-13 Certificates.  To be clear, as shown in SEPTA's Supplemental Certification, which is attached as Exhibit A to the Declaration of Matthew P. Jubenville In Support Of Plaintiffs' Opposition To Defendants' Motions To Dismiss, when SEPTA sold the Certificates in May 2009, it received only $35,545 in proceeds, far less than the remaining $122,252 face value. SEPTA, therefore, incurred losses and Defendants' motion to dismiss as to WFMBS 2007-13 should be denied.

B.      Defendants' Contentions Against The
        Sustained Claims Are Still Not Grounds For Dismissal

"To state a claim under Section 11, a plaintiff must plead: (1) that the registration statement at issue contained a misstatement or omission; and (2) that the misstatement or omission was material." April 22 Order, 2010 U.S. Dist. LEXIS 39825, at *34-35 (citing *Kaplan v. Rose*, 49 F.3d 1363, 1371 (9th Cir. 1994)).  It is well-established that Sections 11 and 12(a)(2) are strict liability claims and do not require Plaintiffs to plead scienter.  *Herman & MacLean v. Huddleston*, 459 U.S. 375, 381-82 (1983) (stating that Section 11 imposes a "stringent standard of liability," that is "virtually absolute, even for innocent misstatements."); *see also Randall v. Loftsgaarden*, 478 U.S. 647 (1986) (same as to Section 12(a)(2)).

While the Amended Complaint asserts solely claims that the Court previously sustained, Defendants now contend that Plaintiffs must plead facts related to Defendants' knowledge.

OPPOSITION TO WELLS FARGO AND UNDERWRITER DEFENDANTS' MOTION TO DISMISS
Case No. 09-cv-01376-SI

1   Defendants' argument is simply wrong.  As discussed below, the Amended Complaint adequately

2   pleads claims under Sections 11 and 12(a)(2) of the Securities Act's strict liability standard by setting

3   forth the untrue statements of material fact and the material information omitted from the Offering

4   Documents.

5           1.      As The Court Previously Found, The Amended Complaint Alleges
                   Untrue Statements And Omissions In The Offering Documents
6

7               a.      Untrue Statements And Omissions
                       Related To Underwriting Standards

8           The Court's April 22 Order upheld Plaintiffs' claims of untrue statements relating to Wells

9   Fargo's stated underwriting standards, as well as the standards of other loan originators in the

10  securitized pools, finding that plaintiffs sufficiently alleged that "the Offering Documents were

11  misleading as to the **extent** to which Wells Fargo and the third-party originators deviated from their

12  guidelines."   2010 U.S. Dist. LEXIS 39825, at *37-38 (emphasis in original).   The Amended

13  Complaint contains allegations that are identical to those that the Court already analyzed and

14  sustained.

15          Defendants' motion asserts an argument that they could have raised previously, but did not,

16  and that several courts have rejected.[8]  Defendants claim that Section 1111(a)(3) of SEC Regulation

17  AB ("Regulation AB") effectively imposes a scienter standard for pleading a violation of the

18  Securities Act for certain loans.  Specifically, Defendants contend that because Section 1111(a)(3)

19  states that Defendants must disclose underwriting criteria and "to the extent known, any changes in

20  such criteria" and whether such criteria can be overridden, Plaintiffs must allege that Defendants had

21  knowledge of the other originators' deviations from the stated underwriting guidelines.  Wells Mot. at

22  2.  Defendants are wrong.

23          As an initial matter, Defendants do not – and cannot – contest the falsity of statements relating

24  to Wells Fargo's underwriting guidelines and those of its correspondent lenders.  Wells Fargo and its

25

26  [8]  Defendants' tactics – filing a second motion consisting of numerous arguments available to them at
    the time of their earlier motion – serve only to unnecessarily delay this litigation.  The allegations in
27  the Amended Complaint related to underwriting standards, ratings processes and appraisals are
    substantively identical to those in the Consolidated Complaint and should not be the subject of
28  successive and piecemeal motions to dismiss.

OPPOSITION TO WELLS FARGO AND UNDERWRITER DEFENDANTS' MOTION TO DISMISS
Case No. 09-cv-01376-SI

1   correspondent lenders originated the vast majority of the mortgage loans in each of the offerings at

2   issue.  Indeed, there are only four trusts to which a third-party originator – American Home Mortgage

3   Corporation ("American Home") – contributed loans.  ¶¶59, 84, 117.  These are the only trusts which

4   Defendants' Regulation AB argument even applies.[9]  As to these trusts, "Defendants [continue] to

5   misunderstand the nature of plaintiffs' allegations."  April 22 Order, 2010 U.S. Dist. LEXIS 39825, at

6   *37.  Plaintiffs' allegations are not premised on undisclosed "changes" in the other originators' (*i.e.*,

7   non-Wells Fargo or correspondent lender) underwriting criteria or the extent to which the other

8   originators' underwriting criteria could be overridden.  Rather, Plaintiffs' allegations are based on the

9   systematic "disregard" for the stated (and unchanged) underwriting guidelines.  Accordingly, Section

10  1111(a)(3) simply does not apply here.

11       Second, Section 11 imposes liability both for untrue statements and omissions.  *See* 15 U.S.C.

12  § 77k(a) (liability exists when a registration statement "contained an untrue statement of a material

13  fact *or* omitted to state a material fact required to be stated therein *or* necessary to make the statements

14  therein not misleading" (emphasis added)).  The duty to disclose found in Regulation AB does not

15  absolve defendants of liability for affirmative misstatements.  Here, Defendants made affirmative

16  misstatements regarding American Home's underwriting guidelines.  The Amended Complaint details

17  how American Home greatly reduced and/or eliminated its underwriting standards in order to approve

18  as many mortgages as possible.  Indeed, an e-mail from an American Home Senior Vice President of

19  Product and Sales Support to loan officers nationwide stated that American Home would make a loan

20  to virtually any borrower, regardless of the borrower's ability to verify income, assets or even

21  employment.  ¶85.

22       Numerous courts have recently held that the phrase "to the extent known" does not apply

23  where the claims are based on "affirmative misstatement[s]."  *See, e.g., In re Lehman Bros. Sec. &*

24  *ERISA Litig.*, 684 F. Supp. 2d 485, 493-94 (S.D.N.Y. 2010) ("Lehman MBS") ("Regulation AB

25  requires the truthful disclosure of the 'underwriting criteria used to originate or purchase the pool

---

[9] American Home originated loans in the Wells Fargo Mortgage Backed Securities 2006-3, 2006-4, 2007-10, 2007-13 Trusts.  ¶117.  American Home originated no more than 20% of the mortgage loans in any of these trusts.

OPPOSITION TO WELLS FARGO AND UNDERWRITER DEFENDANTS' MOTION TO DISMISS
Case No. 09-cv-01376-SI

assets,' and the complaint alleges that the loans were originated using criteria different than those stated in the Offering Documents. As this claim relies on Section 11 of the Securities Act, and not Section 10(b) of the Securities Exchange Act or Rule 10b-5, the Individual Defendants' knowledge is immaterial."); *New Jersey Carpenters Vacation Fund v. The Royal Bank of Scotland Group, PLC*, 2010 WL 1172694, at *11 (S.D.N.Y. Mar. 26, 2010) ("Harborview MBS") (Regulation AB is immaterial because plaintiffs alleged that defendants "affirmatively misstated the guidelines used – or rather, disregarded – by the mortgage originators of the underlying loans"); *New Jersey Carpenters Health Fund v. Residential Capital LLC*, 2010 WL 1257528, at *5 (S.D.N.Y. Mar. 26, 2010) ("RALI MBS") ("Defendants' argument[s] that the information was disclosed and otherwise had no further duty to disclose based on SEC Regulation AB, 17 C.F.R. § 229.1111, are not persuasive for essentially the same reasons laid out in detail in [*Harborview MBS*]").

Defendants ignore these recent on-point decisions and instead rely on two cases that are distinguishable. *See* Wells Mot. at 11 (citing *Landmen Partners Inc. v. Blackstone Group, L.P.*, 659 F. Supp. 2d 532, 545 (S.D.N.Y. 2009), and *Garber v. Legg Mason, Inc.*, 537 F. Supp. 2d 597, 614 (S.D.N.Y. 2008)). First, the duty to disclose in Section 1111(a)(3) was not at issue in either *Landmen Partners* or *Garber*. Rather, both cases involved claimed violations of Item 303 of Regulation S-K, which requires the disclosure of any "known trends or uncertainties, etc." Second, both *Landmen Partners* and *Garber* involved alleged omissions, ***not*** affirmative misstatements. *See*, *Harborview MBS*, 2010 WL 1172694, at *11 (distinguishing *Landmen Partners* and *Garber* because they "focused on what the registration statement ***failed to disclose***).

Regulation AB does not apply to false statements about Wells Fargo's underwriting standards or those of its correspondent lenders and also does not alter Section 11 liability for affirmative misstatements in the Offering Documents that loans were originated "in conformity with" other originators' standards. Defendants' contention, therefore, that Plaintiffs must plead Defendants' knowledge should be rejected.

1

b.      Untrue Statements And Omissions
        Related To Ratings And The Ratings Process

2

3          In its April 22 Order, the Court held that Plaintiffs' allegations related to ratings and the ratings

4   process stated a claim:

5          [P]laintiffs point to … an SEC Summary Report … [and] statements by executives of
           defendants Moody's and Standard & Poor's in which the executives admitted that they
6          were aware at the time the subject ratings were made that the agencies' rating models
           were outdated … ***In the Court's view, these allegations, particularly the statements
7          from Moody's and S&P's executives, are sufficient to establish an actionable
           misstatement with respect to the rating process.***

8

9   2010 U.S. Dist. LEXIS 39825, at *42-43 (emphasis added).

10         Nevertheless – and despite the well-established precept that Sections 11 and 12(a)(2) do not

11  require Plaintiffs to plead scienter – Defendants contend that ratings are "opinions" and that Plaintiffs

12  must plead that the "opinions" are subjectively false – an assertion that was raised and rejected in the

13  original motion to dismiss.  Wells Mot. at 7-8 (relying on *Virginia Bankshares, Inc. v. Sandberg*, 501

14  U.S. 1083, 1095-96 (1991), and *Rubke v. Capitol Bancorp Ltd.*, 551 F.3d 1156, 1162 (9th Cir. 2009)).

15         As an initial matter, Defendants' "subjective falsity standard" never applies to factual

16  statements.  *See In re Wash. Mut. Sec. Deriv. & ERISA Litig.*, 694 F. Supp. 2d 1192, 1223-24  (W.D.

17  Wash. 2009) (finding that audit opinion stating that financial statements were presented "in conformity

18  with accounting principles generally accepted in the United States of America" was an actionable

19  statement of fact); *see also In re McKesson HBOC, Inc. Sec. Litig.*, 126 F. Supp. 2d 1248, 1266 (N.D.

20  Cal. 2000) ("purely factual assertions in the fairness opinion, such as Bear Stearns' statements that it

21  reviewed certain materials during its due diligence inquiry, would be held to a negligence standard").

22  Here, statements in the Offering Documents that ratings addressed "the likelihood of the receipt … of

23  principal and interest" and "the nature of the underlying mortgage loans" are factual assertions that the

24  Certificates' value and risk had been evaluated, and that the ratings accurately reflected the character

25  of the underlying mortgage pools at the time.[10]  These statements bear no resemblance to the "fairness

26

27  [10]  ¶100.  Defendants' contention that the First Amendment compels Plaintiffs to comply with their
    "subjective falsity" standard is baseless.  Wells Mot. at 7 n.7.  "[T]here is no automatic, blanket,
28  absolute First Amendment protection for reports from the credit rating agencies …"  *In re Enron*

OPPOSITION TO WELLS FARGO AND UNDERWRITER DEFENDANTS' MOTION TO DISMISS
Case No. 09-cv-01376-SI

1    opinions" in *Rubke* and *Virginia Bankshares*, which stated that a particular transaction was within a

2    range of fairness from a financial point of view.

3         Moreover, even if the ratings were opinions – which they are not – statements of opinion are

4    actionable when (1) the speaker does not genuinely believe the statement; (2) there is no reasonable

5    basis for that belief; or (3) the speaker is aware of undisclosed facts tending to seriously undermine the

6    accuracy of the statement. *In re Apple Computer Sec. Litig.*, 886 F.2d 1109, 1113-14 (9th Cir. 1989),

7    *cert. denied sub nom. Schneider v. Apple Computer, Inc.*, 496 U.S. 942 (1990). The Amended

8    Complaint amply alleges facts showing that Defendants could not have genuinely or reasonably

9    believed that the ratings, or the statements in the Offering Documents about them, were accurate. For

10   example: (1) as the result of the systemic violations of the underwriting standards, the ratings were

11   based on "inaccurate loan information" related to borrower credit-worthiness, ability to repay, and the

12   sufficiency of the collateral, ¶6; (2) a former managing director at S&P admitted that the models

13   which generated the ratings failed "to capture changes in performance of the new non-prime

14   products," ¶112; (2) a former managing director at Moody's stated that the rating agencies "did not

15   update their models or their thinking," ¶114; (3) Defendants pre-determined the ratings, rather than

16   allowing the ratings to be a product of an evaluation of the underlying loan pools, ¶¶41, 102-03; and

17   (4) the Certificates' value and ratings collapsed shortly after issuance. ¶¶7, 118.

18        The court in *Abu Dhabi Commercial Bank v. Morgan Stanley & Co.*, 651 F. Supp. 2d 155, 176

19   (S.D.N.Y. 2009), in response to the exact argument that Defendants make here, recently held that

20   ratings were actionable false statements because "plaintiffs have sufficiently pled that the Rating

21   Agencies did not genuinely or reasonably believe that the ratings they assigned…were accurate and

22   had a basis in fact." *Id.* at *37. Here, the Amended Complaint details that neither the rating agencies,

23

24   *Corp. Sec., Deriv. & ERISA Litig.*, 511 F. Supp. 2d 742, 817 (S.D. Tex 2005). In fact, the "actual
     malice" standard does not apply to ratings because they are only intended for use in offering
25   documents, rather than for general publication. *LaSalle Nat'l Bank v. Duff & Phelps Credit Rating
     Co.*, 951 F. Supp. 1071, 1095-97 (S.D.N.Y. 1996). *See also In re Fitch, Inc.*, 330 F.3d 104, 108-10
26   (2d Cir. 2003) ("Unlike a business newspaper or magazine … Fitch only 'covers' its own clients. We
     believe this practice weighs against treating Fitch like a journalist."). Here, the rating agencies
27   privately contracted with Defendants to assign the Certificate ratings and took an active role in the
     offerings. They were clearly not journalists and the ratings are not "opinions" entitled to First
28   Amendment protection.

OPPOSITION TO WELLS FARGO AND UNDERWRITER DEFENDANTS' MOTION TO DISMISS
Case No. 09-cv-01376-SI

1    who admitted that they did not update their models or their thinking, nor the Wells Fargo Defendants,

2    who provided the rating agencies with the inaccurate loan information, had a basis to genuinely or

3    reasonably believe in the accuracy of the ratings.

4                        c.        Untrue Statements And Omissions

5                               <u>Related To Appraisals and LTV Ratios</u>

6         The Court's April 22 Order also held that Plaintiffs' allegations related to appraisals/LTV

7    ratios were sufficient to state a claim:

8           Plaintiffs' allegations concerning the allegedly improper appraisal practices are

9           ***sufficiently specific to state a claim*** with respect to the securities at issue in this case. In particular, plaintiffs have alleged that Wells Fargo's practices permitted the pervasive and systematic use of inflated appraisals, affecting all types of mortgages. ***Plaintiff need not***

10           ***allege anything further in order to state a claim.***

11    2010 U.S. Dist. LEXIS 39825, at *40-41 (emphasis added).

12         Accurate real estate appraisals and the calculated LTV ratios and averages based on those

13    appraisals, were essential to assessment of the price and risk of the offered Certificates. ¶¶45-50.

14    Here, the Offering Documents contained statements that originators evaluated the adequacy of the

15    mortgage property as collateral and that appraisals were conducted in conformity with USPAP. ¶¶88-

16    90. In reality, appraisers industry-wide "experience[d] systemic problems of coercion" and were

17    forced to inflate property valuations in order to avoid the "negative ramifications" that would result if

18    they did not "cooperate, alter their appraisal, and provide a higher valuation." ¶95. According to the

19    testimony of the Chair of the Appraisal Institute before the Senate Committee on Banking (¶94), some

20    appraisers were "ordered to doctor their reports" or else they would never "see work from these parties

21    again" and could be "placed on exclusionary or 'do-not-use' lists." *Id.* Additionally, 90% of

22    appraisers reported that mortgage brokers and others pressured them to raise property valuations to

23    make mortgage deals go through. ¶95.

24         A former Wells Fargo Home Mortgage underwriter/senior underwriter from January 2002

25    through April 2006 confirms that representatives constantly pushed the appraisers to inflate the value

26    of the real estate underlying the loans and if the appraisers didn't, "they don't come back to you." ¶93.

27    In addition, a former underwriter from July 2005 through December 2006 explained that appraisals at

28

OPPOSITION TO WELLS FARGO AND UNDERWRITER DEFENDANTS' MOTION TO DISMISS
Case No. 09-cv-01376-SI

Wells Fargo Home Mortgage were "very inflated" and that retail officers "always managed to get the value they wanted."   ¶97.  Indeed, Wells Fargo and RELS Valuation (an appraisal entity jointly owned by an affiliate of Wells Fargo Bank) are the subject of investigation and litigation over the illegal practice of pressuring and intimidating appraisers into using techniques that produce appraisals meeting Wells Fargo's objectives even when the use of such techniques is improper and violates industry standards.  ¶96.

In response to these damaging allegations, Defendants attempt to raise an argument they could have raised in their prior motion, but did not.  In particular, Defendants now claim that each appraisal was an opinion and, therefore, Plaintiffs must plead that the speaker did not truly have the "opinion." Wells Mot. at 7 (citing *Virginia Bankshares*, 501 U.S. at 1095-96, and *Rubke*, 551 F.3d at 1162). Defendants continue to misunderstand the nature of Plaintiffs' allegations.  Plaintiffs allege that the Offering Documents' statements that appraisals were generally conducted in conformity with USPAP were untrue and omitted material information because, in truth, the appraisals were generally not performed in conformity with USPAP, were not performed by truly "independent" appraisers, or both. *Id.*  As a result of this failure to follow stated guidelines, LTV ratios and other values derivative of appraisal value were misstated.

Even assuming, *arguendo*, that appraisals are opinions and Plaintiffs are challenging each individual appraisal – which they are not – the allegations in the Amended Complaint are sufficient to allege actionable untrue statements and omissions.  For example, the Amended Complaint details that appraisers and individuals at Wells Fargo were aware of "do-not-use" lists and pressured appraisers to "cooperate, alter their appraisal, and provide a higher valuation."  ¶¶94-95.  These undisclosed facts "tend[] to seriously undermine the accuracy of the statement[s]" in the Offering Documents that appraisals were conducted in accordance with USPAP and originations were conducted to evaluate the adequacy of the property as collateral.  *See Apple Computer*, 886 F.2d 1109 at 1113-14.  The allegations in the Amended Complaint – which are identical to those this Court already sustained – adequately allege actionable misstatements related to appraisals and LTV ratios.

OPPOSITION TO WELLS FARGO AND UNDERWRITER DEFENDANTS' MOTION TO DISMISS
Case No. 09-cv-01376-SI

1
2

      2.     Defendants Still Have Not Met Their Heavy
            <u>Burden For The Statute Of Limitations Defense</u>

3

4

5

6

7

       The statute of limitations for Sections 11, 12(a)(2) and 15 claims is "one year after the discovery of the untrue statement or the omission, or after such discovery should have been made by the exercise of reasonable diligence." 15 U.S.C. § 77m. The Supreme Court, when dealing with a similar statute contained in the Securities Exchange Act of 1934, recently explained what is required to put a plaintiff on inquiry notice:

8

9

10

11

12

> We conclude that the limitations period . . . begins to run once the plaintiff did discover or a reasonably diligent plaintiff would have "discover[ed]" the facts constituting the violation" – whichever comes first. In determining the time at which the "discovery" of those "facts" occurred, terms such as "inquiry notice" and "storm warnings" may be useful to the extent that they identify a time when the facts would have prompted a reasonably diligent plaintiff to begin investigating. ***But the limitations period does not begin to run until the plaintiff thereafter discovers or a reasonably diligent plaintiff would have discovered "the facts constituting the violation,"***

13

14

15

16

*Merck & Co., Inc. v. Reynolds*, 130 S. Ct. 1784, 1798 (U.S. 2010) (emphasis added). Previously, this Court found Defendants' statute of limitations defense "unpersuasive," and *Merck* raises the standard which Defendants would have to meet. A court deciding defendants' motions to dismiss in a recent mortgage-backed securities case explained:

17

18

19

20

> *Merck*, if anything, favors the plaintiffs here. Indeed, in *Merck*, the Court rejected arguments of the defendants quite similar to the arguments made by defendants here and held, in effect, that even if a plaintiff had 'inquiry notice' sufficient to warrant beginning to investigate, a plaintiff would not be barred by the statute of limitations unless a reasonably diligent plaintiff similarly situated would have actually discovered the facts showing the violations alleged in the plaintiff's complaint.

21

*Merrill MBS*, 2010 WL 2175875, at *2.

22

23

24

25

       As this Court correctly held, the statute of limitations defense is fact-intensive and is generally not appropriate for consideration at the pleading stage. April 22 Order, 2010 U.S. Dist. LEXIS 39825, at **23, 26-27. Nevertheless, Defendants again contend that their wrongdoing was so obvious and their statements were so clearly false that Plaintiffs should have commenced suit much sooner.

26

27

       First, Defendants' assertions that Plaintiffs carry the burden is legally incorrect. In the Ninth Circuit, "***the defendant bears a considerable burden*** … that the plaintiff's claim is time barred." *Betz*

28

OPPOSITION TO WELLS FARGO AND UNDERWRITER DEFENDANTS' MOTION TO DISMISS
Case No. 09-cv-01376-SI

1   *v. Trainer Wortham & Co., Inc.*, 519 F.3d 863, 877 (9th Cir. 2008) (emphasis added).  The Ninth

2   Circuit's finding in *Betz* was in the context of a summary judgment motion in a Section 10(b) case,

3   and "[t]he burden must be at least as high on the pleadings."  *See In re Charles Schwab Corp. Sec.*

4   *Litig.*, 257 F.R.D. 534, 557 (N.D. Cal. 2009) (applying *Betz* and declining to find that Section 11

5   claims were untimely as a matter of law).

6       Defendants assert that Plaintiffs must plead additional details related to the circumstances of

7   their discovery and facts demonstrating their diligence.  Wells Mot. at 9-10.  In support, Defendants

8   ignore *Betz* and instead rely heavily on *Toombs v. Leone*, 777 F.2d 465 (9th Cir. 1985), and other

9   cases decided long before the Ninth Circuit's decision in *Betz* and the Supreme Court's decision in

10  *Merck*.[11]   The Ninth Circuit and others, however, have criticized *Toombs*, stating that it "has incurred

11  forceful, and we think justified, criticism."  *Johnson v. Aljian*, 490 F.3d 778, 782 n.13 (9th Cir. 2007).

12  *See also Tregenza v. Great Am. Commc'ns Co.*, 12 F.3d 717, 719 (7th Cir. 1993) ("[t]o the extent that

13  the rule [in *Toombs*] has persisted, it has done so by blind inertia" and that "[i]t is time that it was

14  discarded").  The *Aljian* court noted that a rule like that announced in *Toombs* is inappropriate as the

15  statute of limitations improperly "becomes transformed as an element of [the] claim."  *Id.* (finding that

16  plaintiffs need not plead the statute of limitations as an element of a Section 10(b) claim).

17      Second, Defendants are factually wrong.  The Amended Complaint alleges: (1) the date when

18  Plaintiffs were first plausibly on notice; (2) the reason that date is significant; (3) and that despite the

19  exercise of reasonable diligence, they could not have discovered their claims at an earlier time.  ¶¶104,

20  136, 145.  Specifically, the Certificates maintained their investment-grade rating until at the earliest

21  May 20, 2008, when Certificates that were initially rated "A" or higher were first downgraded below

22  investment-grade.  ¶104.  Accordingly, no "sufficient suspicion" of a Securities Act claim on behalf of

23  Wells Fargo investors reasonably existed prior to May 20, 2008.  *Betz*, 519 F.3d at 876; *Charles*

---

[11]  Defendants also rely heavily on *Toombs'* progeny.  *See, e.g., In re Infonet Servs. Corp. Sec. Litig.*, 310 F. Supp. 2d 1106, 1115 (C.D. Cal. 2003) (applying *Toombs* even though "Plaintiffs fail to address this argument"); *Erickson v. Kiddie*, 1986 WL 544, at *7 (N.D. Cal. Feb. 24, 1986) (erroneously applying fraud standard to § 12(2) claim, stating plaintiffs "failed to allege the reasons for not discovering the alleged *fraud* and the efforts they have made to discover it") (emphasis added).  As with *Toombs*, these district court decisions were decided well before *Betz* and *Charles Schwab*.

OPPOSITION TO WELLS FARGO AND UNDERWRITER DEFENDANTS' MOTION TO DISMISS
Case No. 09-cv-01376-SI

1    *Schwab.*, 257 F.R.D. at 556.  The initial action was timely filed on March 27, 2009 – well within one

2    year of the May 20, 2008 downgrades.

3         In addition to the Court's April 22 Order, several courts have rejected arguments identical to

4    Defendants' contention here.  *See, e.g., Harborview MBS*, 2010 WL 1172694, at *9 ("Plaintiffs point

5    out that they could not have known that the originators' disregard for underwriting guidelines

6    specifically included the underwriting of the loans used for the Harborview Trusts until the

7    Certificates were downgraded by the rating agencies after May 14, 2007"); *Merrill MBS*, 2010 WL

8    2175875, at *2; *IndyMac MBS*, 2010 WL 2473243, at *5 ("the Court cannot conclude as a matter of

9    law that the publicly available information was sufficiently specific to put the plaintiffs on actual or

10   inquiry notice that a cause of action was probable.").

11   IV.   <u>CONCLUSION</u>

12        For the foregoing reasons, Plaintiffs respectfully submit that Defendants' motions should be

13   denied and that Defendants be ordered to answer the Amended Complaint within 20 days.  In the event

14   the Court decides to dismiss all or part of Plaintiffs' allegations, Plaintiffs respectfully request leave to

15   replead.  Fed. R. Civ. P. 15(a) sets forth a policy in favor of granting leave to amend, stating that leave

16   shall be freely given when justice so requires.  *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048,

17   1052 (9th. Cir. 2003) (dismissal with prejudice and without leave to amend is not appropriate unless it

18   is clear "that the complaint could not be saved by amendment.").

19   DATED:  July 16, 2010                    BERNSTEIN LITOWITZ BERGER
                                                  & GROSSMANN LLP
20

21                                                  */s/ David R. Stickney*
                                                 DAVID R. STICKNEY
22

23                                           DAVID R. STICKNEY (Bar No. 188574)
                                             TIMOTHY A. DeLANGE (Bar No. 190768)
                                             MATTHEW P. JUBENVILLE (Bar No. 228464)
24                                           TAKEO A. KELLAR (Bar No. 234470)
                                             12481 High Bluff Drive, Suite 300
25                                           San Diego, CA 92130
                                             Tel:   (858) 793-0070
26                                           Fax:   (858) 793-0323
                                             davids@blbglaw.com
27                                           timothyd@blbglaw.com
                                             matthewj@blbglaw.com
28                                           takeok@blbglaw.com

OPPOSITION TO WELLS FARGO AND UNDERWRITER DEFENDANTS' MOTION TO DISMISS
Case No. 09-cv-01376-SI

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

*Counsel for Lead Plaintiffs and the Class and Plaintiffs Public Employees' Retirement System of Mississippi and Vermont Pension Investment Committee*

KLAUSNER & KAUFMAN, P.A.
ROBERT D. KLAUSNER
STUART A. KAUFMAN
10059 Northwest 1st Court
Plantation, FL 33324
Tel:    (954) 916-1202
Fax:    (954) 916-1232

*Additional Counsel for Lead Plaintiff Louisiana Sheriffs' Pension and Relief Fund*

COHEN MILSTEIN SELLERS & TOLL PLLC
CAROL V. GILDEN
190 South LaSalle Street, Suite 1705
Chicago, Illinois 60603
Tel:    (312) 357-0370
Fax:    (312) 357-0369
          -and-
STEVEN J. TOLL
1100 New York Avenue, NW
Suite 500 West
Washington, DC 20005
Tel:    (202) 408-4600
Fax:    (202) 408-4699

*Counsel for Plaintiff the Policemen's Annuity and Benefit Fund of the City of Chicago*

CHIMICLES & TIKELLIS LLP
KIMBERLY DONALDSON SMITH
361 West Lancaster Avenue
Haverford, PA  19041
Tel:    (610) 642-8500
Fax:    (610) 649-3633

*Counsel for Plaintiff Southeastern Pennsylvania Transportation Authority*

LABATON SUCHAROW LLP
CHRISTOPHER J. KELLER
140 Broadway
New York, New York 10005
Tel:    (212) 907-0700
Fax:    (212) 818-0477

*Counsel for Plaintiff Plumbers & Steamfitters Local 60 Pension Plan*

23

OPPOSITION TO WELLS FARGO AND UNDERWRITER DEFENDANTS' MOTION TO DISMISS
Case No. 09-cv-01376-SI

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

OPPOSITION TO WELLS FARGO AND UNDERWRITER DEFENDANTS' MOTION TO DISMISS
Case No. 09-cv-01376-SI